# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GEOMATRIX, LLC,

     Plaintiff,

v.

NSF INTERNATIONAL,
BIOMICROBICS, INC.,
HOOT SYSTEMS, LLC,
JAMES BELL, and
RONALD SUCHECKI,

     Defendants.

Case No. 20-13331
District Judge Robert Cleland
Magistrate Judge R. Steven Whalen

---

## NSF INTERNATIONAL'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1) AND FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

Defendant NSF International ("NSF") moves this Honorable Court for entry of an order dismissing Plaintiff's complaint against NSF in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In support of its motion, NSF relies on the accompanying brief.

Pursuant to E.D. Mich. Local Rule 7.1(a), NSF's counsel sought concurrence in the relief requested but concurrence was denied.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By: /s/ Jonathan F. Karmo

Jon R. Steiger (P35505)

Patrick M. McCarthy (P49100)
Jonathan F. Karmo (P76768)
Attorneys for Defendant NSF International, Only
450 West Fourth Street | Royal Oak, MI 48067
pmm@h2law.com| jrs@h2law.com| jfk@h2law.com
248-645-1483

**NSF INTERNATIONAL'S BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION UNDER FED. R. CIV. P. 12(b)(1)
<u>AND FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   BACKGROUND ..........................................................................................1

    A.   NSF, NSF's Joint Committee (JC), and Task Groups (TGs)...............2

    B.   The Debate About Testing and HSW Treatment Systems...................3

    C.   Geomatrix's Due Process and Appellate Rights ..................................4

    D.   Geomatrix's Prior NSF/ANSI Standard 40 Certification ...................5

III.  LEGAL STANDARDS .................................................................................5

    A.   Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1) ........................5

    B.   Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)...............................6

IV.   ARGUMENT.................................................................................................6

    A.   The Court Lacks Subject Matter Jurisdiction ......................................6

        1.   Geomatrix has not exhausted administrative remedies .............7

        2.   Geomatrix does not have standing to pursue unripe claims ......9

        3.   Geomatrix unilaterally abandoned, mooted, and does not have
            an injury in fact, relating to Standard 40 ..................................11

    B.   Many of Geomatrix's Claims are Time-Barred .................................14

        1.   The antitrust claim is time-barred ............................................14

        2.   The unfair competition claims are time-barred........................17

        3.   The business defamation claim is time-barred .........................18

        4.   The tortious interference claim is time-barred..........................18

    C.   Geomatrix Fails to State Any Plausible Claim Against NSF ............19

        1.   Geomatrix fails to plead a plausible antitrust claim ................19

            a.   Geomatrix has not, and cannot, allege a *per se*
               violation ........................................................................19

  b. Geomatrix fails to plausibly allege an antitrust "conspiracy" or "unlawful agreement" .........................20

  c. Geomatrix does not plausibly allege a "market injury" ...............................................................23

  d. Geomatrix does not plausibly allege a Section 2 claim...............................................................................25

 2. The remaining claims fail for additional reasons.....................25

  a. Geomatrix fails to state claims for unfair competition, business defamation, or fraud........................................25

  b. Geomatrix fails to state a claim under the MCPA..........27

  c. Geomatrix does not plausibly plead tortious interference ...................................................................27

  d. The promissory estoppel counts fail to state a claim......29

V. CONCLUSION.............................................................................30

## INDEX OF AUTHORITIES

**Cases**

*Advanced Network Sol., Inc. v. Alexander*,
  No. 254374, 2006 BL 174986 (Mich. Ct. App. Feb. 21, 2006) ...........................28
*Advanced Tech. Corp. v. Instron, Inc.*,
  925 F. Supp. 2d 170 (D. Mass. 2013)..........................................................21
*Am. Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp.*,
  456 U.S. 556 (1982).................................................................................22
*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997)..................................................................................12
*AWGI, L.L.C. v. Atlas Trucking Co., L.L.C.*,
  381 F. Supp. 3d 832 (E.D. Mich. 2019) ............................................................17
*Bearden v. Ballad Health*,
  967 F.3d 513 (6th Cir. 2020) .................................................................6, 9
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................... 6, 20, 21
*Bliss Clearing Niagara, Inc. v. Midwest brake Bond Co.*,
  339 F. Supp. 2d 944 (W.D. Mich. 2004) ............................................................17
*Boulding v. Sudhir*,
  No. 15-12706, 2016 WL 5430189 (E.D. Mich. Sept. 29, 2016) ...........................6
*Broadcom Corp v. Qualcomm Inc.*,
  501 F.3d 297 (3d. Cir. 2007) ....................................................................23
*Buchholz v. Meyer Njus Tanick, PA*,
  946 F.3d 855 (6th Cir. 2020) ............................................................. 12, 13
*Care Heating & Cooling, Inc. v. Am. Standard, Inc.*,
  427 F.3d 1008 (6th Cir. 2005) ...................................................................23
*Church of Scientology v. United States*,
  506 U.S. 9 (1992).....................................................................................12
*CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*,
  No. 05-60087, 2007 WL 2649244 (E.D. Mich. Sept. 10, 2007) ...........................17
*CMI Intern., Inc. v. Intermet Intern. Corp.*,
  251 Mich. App. 125; 649 N.W.2d 808 (2002) ...................................................28
*Consolidated Metal Prods. Inc. v. Am. Petroleum Inst.*,
  846 F.2d 284 (5th Cir. 1988) ........................................................ 19, 24, 26
*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)..................................................................................11

*DBI Invs., LLC v. Blavin*,
  617 F. App'x 374 (6th Cir. 2015) .................................................................. 29, 30

*Dorman Prods., Inc. v. Dayco Prods., LLC*,
  749 F. Supp. 2d 630  (E.D. Mich. 2010) ...........................................................28

*Douglas v. Ocwen Loan Serv., LLC*,
  No. 17-11814, 2017 WL 3642136 (E.D. Mich. Aug. 24, 2017) ................. 1, 2, 6

*DXS, Inc. v. Siemens Med. Sys., Inc.*,
  100 F.3d 462 (6th Cir. 1996) ........................................................................ 15, 16

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992) ............................................................................................25

*George S. Hofmeister Family Trust v. FGH Industries, LLC*,
  No. 06-13984, 2006 WL 3741906 (E.D. Mich. Dec. 15, 2006) ...........................6

*Greater Rockford Energy and Tech Corp. v. Shell Oil Co.*,
  998 F.2d 391 (7th Cir. 1993) .............................................................................19

*Haswood v. Am. Ploygraph Ass'n*,
  No. 14-00253, 2015 WL 846420 (D. Ariz. Feb. 26, 2015) .......................... 13, 26

*Hydrolevel, Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ............................................................................................23

*In re Circ. Breaker Litig.*,
  984 F. Supp. 1267 (C.D. Cal. 1997) .............................................................. 14, 19

*In re Text Messaging Antitrust Litig.*,
  782 F.3d 867 (7th Cir. 2015) .............................................................................21

*Indeck Energy Servs., Inc. v. Consumers Energy Co.*,
  250 F.3d 972 (6th Cir. 2000) .............................................................................24

*J & M Sidewinders, Inc. v. Valeo Sylvania, L.L.C.*,
  No. 05-40094, 2005 WL 1801987 (E.D. Mich. July 28, 2005)...........................17

*Lai v. USB-Implementers Forum, Inc.*,
  No. 14-05301, 2015 WL 12746705 (C.D. Cal. March 11, 2015) ................. 22, 24

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990)............................................................................................12

*Mass. School of Law at Andover, Inc. v. Am. Bar Assoc.*,
  937 F. Supp. 435 (E.D. Pa. 1996) .................................................................. 13, 26

*Metcalf v. Nat'l Petroleum Council*,
  553 F.2d 176 (D.C. Cir. 1977).............................................................................11

*Nagle Indus., Inc. v. Ford Motor Co.*,
  173 F.R.D. 448 (E.D. Mich. 1997) ......................................................................27

*Ogden v. Little Caesar Enters., Inc.*,
   393 F. Supp. 3d 622 (E.D. Mich. 2019) ...............................................................19

*OverDrive Inc. v. Open E-Book Forum*,
   --- F.3d ---, 2021 WL 402095 (6th Cir. 2021)..............................................8, 11

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
   926 F. Supp. 2d 36 (D.D.C. 2013)........................................................................25

*P.T. Today, Inc. v. Office of Fin. And Ins. Servs.*,
   270 Mich. App. 110 (2006) ...................................................................................28

*Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*,
   801 F. Supp. 2d 1163 (D. N. M. 2011)........................................ 10, 19, 22, 25

*Process Controls Intern., Inc. v. Emerson Process Mgmt.*,
   753 F. Supp. 2d 912 (E.D. Ma. 2010).................................................................22

*R.J. Reynolds Tobacco Co. v. U.S. Food and Drug Administration*,
   810 F.3d 827 (D.C. Cir. 2016) ..............................................................................10

*Rogers v. Stratton Industries*,
   798 F.2d 913(6th Cir. 1986) ...................................................................................6

*Rosen v. Tenn. Comm'r of Fin. & Admin.*,
   288 F.3d 918 (6th Cir. 2002) ...................................................................................9

*RXUSA Wholesale, Inc. v. Alcon Labs*,
   391 F. App'x 59 (2d Cir. 2010) ............................................................................25

*Saab Auto. AB v. Gen. Motors Co.*,
   770 F.3d 436 (6th Cir. 2014) .................................................................................29

*Schipani v. Ford Motor Co.*,
   102 Mich. App. 606 (1982) ...................................................................................28

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
   801 F.3d 412 (4th Cir. 2015) .................................................................... passim

*Spencer v. Kemna*,
   523 U.S. 1 (1998)........................................................................................................6

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).............................................................................................12

*State Bank of Standish v. Curry*,
   442 Mich. 76; 500 N.W.2d 104 (Mich. 1993)...................................................29

*Thermal Design, Inc. v. Am. Society of Heating*,
   No. 07-C-765, 2013 WL 12094813 (E.D. Wis. June 12, 2013)................... 22, 25

*Thomas v. Union Carbide Agricultural Products Co.*,
   473 U.S. 568 (1985)...................................................................................................8

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
   552 F.3d 430 (6th Cir. 2008) ...............................................................20
*Trepel v. Pontiac Osteopathic Hosp.*,
   135 Mich. App. 361 (1984) ..................................................................28
*Volvo North Am. Corp. v. Men's Intern. Professional Tennis Council*,
   857 F.2d 55 (2d Cir. 1988) ...................................................................10
*Warshak v. United States*,
   532 F.3d 521 (6th Cir. 2008) ..................................................................8
*White v. United States*,
   601 F.3d 545 (6th Cir. 2010) ............................................................9, 12

## Statutes

15 U.S.C. §15b ......................................................................................14
Mich. Comp. Laws §600.5805(11) ........................................................18
Mich. Comp. Laws §600.5805(2) ..........................................................18

## Other Authorities

*ANSI Essential Requirements*,
   https://share.ansi.org/Shared%20Documents/About%20ANSI/Current_Versions_
   Proc_Docs_for_Website/ER_Pro_current.pdf (Jan. 2021 ed.) ...............................4
NSF's Standards development and maintenance policies, https:
   //d2evkimvhatqav.cloudfront.net/documents/NSF_2013_standards_
   policies.pdf. ..........................................................................2

## Rules

Fed. R. Civ. P. 12(b)(1) .......................................................................5, 6
Fed. R. Civ. P. 12(b)(6) ..........................................................................6

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.    Whether the Court should dismiss Geomatrix's claims against NSF because Geomatrix lacks Article III standing and asserts claims against NSF that are either not ripe for judicial review or that have been voluntarily abandoned and are moot.

    NSF answers, "Yes."
    The Court should answer, "Yes."

II.    Whether the Court should dismiss most of Geomatrix's claims against NSF because they are barred by the applicable statutes of limitation.

    NSF answers, Yes."
    The Court should answer, "Yes."

III.    Whether the Court should dismiss Geomatrix's claims against NSF for failure to state a plausible claim upon which relief can be granted.

    NSF answers, "Yes."
    The Court should answer, "Yes."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Buchholz v. Meyer Njus Tanick, PA*,
     946 F.3d 855 (6th Cir. 2020).

*DXS, Inc. v. Siemens Med. Sys., Inc.*,
     100 F.3d 462 (6th Cir. 1996).

*Indeck Energy Servs., Inc. v. Consumers Energy Co.*,
     250 F.3d 972 (6th Cir. 2000).

*Ogden v. Little Caesar Enters., Inc.*,
     393 F. Supp. 3d 622 (E.D. Mich. 2019).

*OverDrive Inc. v. Open E-Book Forum*,
     --- F.3d ---, 2021 WL 402095 (6th Cir. 2021).

*Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*,
     801 F. Supp. 2d 1163 (D. N. M. 2011).

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
     801 F.3d 412 (4th Cir. 2015).

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
     552 F.3d 430 (6th Cir. 2008).

## I.    INTRODUCTION

The myriad of contract, tort, and statutory claims in Geomatrix's 158-page, 11-count, 465-paragraph complaint, offer only insults towards NSF International, a non-profit entity, but not a single plausible claim for relief.  The Court must see through Geomatrix's attempt at creating the appearance of substance.

First, the Court lacks subject matter jurisdiction.  Second, most of Geomatrix's claims against NSF are time-barred.  Finally, Geomatrix fails to state a plausible claim for relief.  Accordingly, this case should be dismissed with prejudice.

## II.    BACKGROUND

This case relates to standards for on-site wastewater treatment systems, including the development and certification to those standards.  NSF/ANSI Standard 40, adopted in 1970, establishes the minimum materials, design and construction, and performance requirements for *residential* wastewater treatment systems.  *Id.* at PageID.26; ¶76.  It does not address commercial or "high-strength" wastewater ("HSW") treatment systems (i.e. systems that treat high volume wastewater, such as, for example, hotels or restaurants).  *See* **Ex. 1**, NSF/ANSI Standard 40 Excerpt.[1]

Wastewater treatment systems include: (1) aerobic treatment units, also known as "ATU" or "black box" systems; and (2) treatment and dispersal systems

---

[1] Standard 40 is referenced and relied on in Geomatrix's complaint and can be considered under Fed. R. Civ. P. 12(b)(6).  *Douglas v. Ocwen Loan Serv., LLC*, No. 17-11814, 2017 WL 3642136, at *1 (E.D. Mich. Aug. 24, 2017) (Cleland, J.).

("T&D systems"), also referred to as "trench and mound" or "open bottom" systems. ECF No. 1 at PageIDs.12, 78; ¶¶30, 202. ATU's typically use a tank with aeration devices to treat the wastewater prior to discharge. *Id.* at PageID.12; ¶31. T&D systems, the only type that Geomatrix manufactures, are sand or soil-based systems consisting of a tank to separate effluent but with actual treatment occurring once dispersed into trenches in a field. *Id.* at ¶¶32, 41–43. Both ATU and T&D systems are eligible for certification under Standard 40. *Id.* at PageID.26; ¶76.

### A.   NSF, NSF's Joint Committee (JC), and Task Groups (TGs)

NSF is a non-profit Standards Setting Organization ("SSO") and certification entity. NSF holds many accreditations, including from the American National Standards Institute ("ANSI"). ECF No. 1 at PageIDs.2, 23–24; ¶¶1–3, 67, 70.

In its SSO capacity, NSF forms "Joint Committees" ("JC") by industry to serve as governing bodies for standards development. ECF No. 1 at PageID.25; ¶72. Relevant here, the JC on "Wastewater Technology" is the consensus body solely responsible for development of, and revision to, any wastewater standard. *Id.;* **Ex. 2**, NSF's Standards development and maintenance policies, at §3.1, https://d2evkimvhatqav.cloudfront.net/documents/NSF_2013_standards_policies.pdf.[2]

---

[2] NSF's Standards development and maintenance policies can be considered because Geomatrix relies on them throughout its Complaint and they form the basis of Count XI in its entirety. *See* ECF No. 1 at PageIDs.25, 49–51, 60, 65, 69, 72, 89, 120, 131, 146, 148, 153–54; ¶¶ 71–73, 138–145, 163, 176, 182, 192–93, 236, 327, 367, 425, 430, 456–62, and Count XI (PageIDs.153–55). *Douglas*, 2017 WL 3642136, at *1.

The JC may create "Task Groups" ("TG") (ECF No. 1 at PageID.25; ¶73), "[i]f deemed appropriate by JC members," and they serve in an advisory capacity, "providing recommendations to the JC responsible for the standard(s) affected by the recommendation." **Ex. 2**, at §3.1.2.  While a TG provides recommendations to the JC, only the JC makes the actual final decisions.  *Id.* at §§3.1, 8.1.  Two TG's are relevant here: (1) the TG for Standard 40; and (2) the TG for Standard 441 (a standard that is still under development, and which may never be adopted in the future).  ECF No. 1 at PageIDs.36–37, 39–40, 89; ¶¶ 113, 123, 234.

## B.     The Debate About Testing and HSW Treatment Systems

For multiple years, the JC has been debating: (a) whether separate testing requirements for ATU and T&D systems should be adopted and (b) whether a new standard for HSW treatment systems should be created.  *See* ECF No. 1 at PageID.88; ¶234.  Geomatrix wrongly assumes that the JC has taken final action on both questions, which it has not.  Geomatrix complains that the TG for potential Standard 441 (not the JC) took a "straw poll" that presented two potential options:

1. Contained [ATU] systems only to test to discharge standard & Uncontained [T&D] systems test in in lined cell for effluent quality and ponding.

2. All systems must test for effluent quality and ponding.

*Id.* at PageID.102; ¶281.  Option 1 received the most votes.  *Id.* at PageID.102; ¶285.

Geomatrix contends that, "[b]y proposing to exclude" T&D systems from *potential* Standard 441 (which, as explained, has not been, and may never be,

3

adopted), "NSF is handicapping Geomatrix and other manufacturers" of T&D systems.  *Id.* at PageID.112; ¶320.  Specifically, Geomatrix complains that there should be an "apples-to-apples test . . . developed to determine the ability of any technology to treat high strength wastewater."  *Id.* at PageID.120; ¶328. Yet, Geomatrix has not alleged that the JC (the sole and actual decisionmaker) has taken any action to require different testing or a new standard, and the JC has not done so.

### C.   Geomatrix's Due Process and Appellate Rights

Even had the JC decided one or both matters by a vote (it has not), the NSF and ANSI policies permit objections to any final JC action.  NSF's objection procedures are in section 8 and the direct appeal provisions in section 10. *See* **Ex. 2**, at §§ 8, 10, and 10.1.  Both sections require compliance with the ANSI due process requirements, which provide a party with the right to express and be heard on a position and the right to appeal.  *Id.;* **Ex. 3**, *ANSI Essential Requirements*, at § 1.0,https://share.ansi.org/Shared%20Documents/About%20ANSI/Current_Versions_Proc_Docs_for_Website/ER_Pro_current.pdf (Jan. 2021 ed.).[3]

Following the objection procedure and any appeal with NSF, an aggrieved party may appeal directly to ANSI.  **Ex. 3** at §§1.0, 1.6, and 2.8.  All "[p]ersons who have directly and materially affected interests and who have been or will be

---

[3] The ANSI due process requirements are also referenced in and central to many of Geomatrix's allegations and claims such that they can be considered here.  *See, e.g.*, ECF No. 1 at PageIDs.5–7, 49–51, 122; ¶¶7, 13, 15, 136–37, 139, 143, 335–37.

adversely affected by any procedural action or inaction by ANSI or by an ANS-related process have the right to appeal." *Id.* at §2.8.2. ANSI normally will not hear an appeal until a direct appeal with the standards developer is complete. *Id.*

### D.   Geomatrix's Prior NSF/ANSI Standard 40 Certification

In 2014, eight of Geomatrix's "GeoMat" line of products (all T&D systems) received Standard 40 certification by NSF. *See, e.g.*, ECF No. 1 at PageIDs.35, 127; ¶¶106, 355. However, just four years later, in 2018, Geomatrix *voluntarily* withdrew all its products from Standard 40 certification, "due to the uncertainty surrounding which, if any, states will allow use of certified open bottom [T&D] technologies." **Ex. 4**, Decl. of T. Bellish, at ¶5 and Ex. A (Feb. 2, 2018 Email).[4] To date, Geomatrix has not sought to recertify any of its products. *Id.* at ¶6.

### III.   LEGAL STANDARDS

### A.   Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1)

 "When the defendant challenges subject matter jurisdiction through a motion to dismiss under 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over his claim." *George S. Hofmeister Family Trust v. FGH Industries, LLC*, No. 06-13984, 2006 WL 3741906, at *4–5 (E.D. Mich.

---

[4] NSF relies on Declaration of Theresa Bellish solely as it relates to the factual challenge to subject matter jurisdiction. The Court may consider and weigh evidence for this inquiry. *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014). NSF does not rely on these facts for its Rule 12(b)(6) motion.

Dec. 15, 2006) (Cleland, J.).   "In reviewing a 12(b)(1) motion, the court may consider evidence outside of the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Id.*; *Rogers v. Stratton Industries*, 798 F.2d 913, 916 (6th Cir. 1986).  Issues concerning "standing cannot be inferred . . . from averments in the pleadings, but rather must affirmatively appear in the records[.]" *Spencer v. Kemna*, 523 U.S. 1, 10–11 (1998); *Bearden v. Ballad Health*, 967 F.3d 513, 518 (6th Cir. 2020).

### B.      Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) "provides for dismissal for failure to state a claim upon which relief may be granted." *Boulding v. Sudhir*, No. 15-12706, 2016 WL 5430189, at *1 (E.D. Mich. Sept. 29, 2016) (Cleland, J.). "[T]o survive a motion to dismiss, a complaint must provide sufficient facts to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may consider the pleadings, the public record, and documents referenced in the complaint.  *Douglas*, 2017 WL 3642136, at *1.

### IV.   ARGUMENT

### A.      The Court Lacks Subject Matter Jurisdiction

Geomatrix's claims against NSF can be grouped into two categories of alleged wrongdoing relating to: (1) existing Standard 40; and (2) the potential future implementation of a Standard 441.  *See* ECF No. 1 at PageIDs.129–30, 149–50;

¶¶361–63, 437 (Counts I and IX re: Standard 40); and PageIDs.131–33, 137–38, 145–48, 151–54; ¶367, 385, 391–92, 424–30, 448, 459–60 (Counts II, IV, V, VII, VIII, X, and XI re: Standard 40 and *potential* Standard 441). As to Standard 40, Geomatrix contends that NSF has: (1) denied that T&D systems can be properly certified under Standard 40; and (2) tainted Standard 40 certification for T&D systems in the eyes of state regulators. *See, e.g.*, ECF No. 1 at PageID.126–30; ¶¶352–63. As to *potential* Standard 441, Geomatrix contends it is damaged by NSF permitting discussion whether to implement a new standard or whether to require different testing for T&D systems. *See, e.g.*, ECF No. 1 at PageIDs.142–43; ¶413.

### 1. Geomatrix has not exhausted administrative remedies

All of Geomatrix's claims against NSF—whether related to Standard 40 or *potential* Standard 441—must be dismissed because Geomatrix cannot satisfy ripeness or establish an "injury in fact" without fully exhausting its available administrative remedies. If a decision is ever made by the JC to test ATU and T&D systems differently, whether under Standard 40 or *potential* Standard 441, Geomatrix has available administrative remedies, both with NSF directly and then with ANSI. **Ex. 2** at §10; **Ex. 3** at §§ 1.0, 1.6, and 2.8. Until a final decision is made by the JC to require different testing (which may never occur) and Geomatrix exhausts its administrative remedies with NSF and ANSI (which also may never occur or which could satisfactorily resolve Geomatrix's grievance), Geomatrix's

claims are not ripe and it lacks standing. Likewise, the claim that Standard 40 certification is somehow being undermined can, and must, be raised administratively. *See* **Ex. 2**, at §10.1 (permitting appeal for JC *actions* or *inactions*).

The ripeness doctrine exists "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580 (1985). The ripeness doctrine is grounded in Article III limitations. *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (citation omitted). Courts must consider: "(1) is the claim 'fit[] . . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is the 'hardship to the parties of withholding court consideration'?" *Id.* (citations omitted).

The Sixth Circuit recently found that a claim against a trade association was not ripe where there did not exist a "concrete factual context" concerning a dispute "likely to come to pass" and because it depended on "contingent future events that may not occur as anticipated or indeed may not occur at all." *OverDrive Inc. v. Open E-Book Forum*, --- F.3d ---, ---, 2021 WL 402095, at *3 (6th Cir. 2021) (citation and internal quotation marks omitted). The Sixth Circuit found that the claims depended on too many contingencies ("*if*" and "*when*"), "'riddl[ing] the claim with the kinds of 'contingencies and speculation' that obstruct federal 'judicial review.'" *Id.*

Similarly, a "'threatened injury must be certainly impending to constitute injury in fact.'" *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 929 (6th Cir. 2002) (citation omitted).  Speculative harm based on events that may not occur in the future cannot establish an injury in fact.  *See, e.g.*, *White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010) ( "overly speculative" allegations insufficient to confer constitutional standing); *Bearden*, 967 F.3d at 516 (a threatened injury must be "certainly impending" to ensure "that courts stay within their proper role of resolving cases or controversies—and nothing more.").

Because the JC has not made any final decision, and Geomatrix has not yet exhausted administrative remedies with NSF and ANSI, Geomatrix's claims are not ripe.  Geomatrix also does not sufficiently allege an Article III "injury in fact." Geomatrix does not allege that it has been unable to participate in the ongoing debate or that it cannot avail itself of NSF's appellate processes.  To the contrary, Geomatrix confirms that it has been able to regularly offer its viewpoints and participate in NSF's activities.  *See, e.g.*, ECF No. 1 at PageIDs.56, 64, 85–87, 95, 98; ¶¶158, 173, 223, 226–27, 254, 265–67.  Thus, Geomatrix wrongly seeks an advisory opinion on issues that are unripe.  Geomatrix cannot establish Article III standing.

## 2.    Geomatrix does not have standing to pursue unripe claims

Setting aside Geomatrix's improper efforts to prematurely sidestep the established administrative process, including the right to appeal to NSF and ANSI,

Geomatrix's claims relating to a potential standard or testing criteria that may never be implemented—*potential* Standard 441 or *potential* changes to Standard 40—are not ripe and do not present an "injury in fact."  To date, no decision has been made by the JC to change Standard 40 or to create a new standard (and there may never be one). Nor has a decision been made about the scope of any *potential* new standard, if ever adopted.  Nothing has even been presented to the JC for a vote.  Accordingly, Geomatrix has not been injured, and its challenge to a *potential* standard is not ripe.

Allegations of wrongdoing relating to the potential future adoption of a standard by an SSO do not rise to the level of a justiciable "case or controversy." *See Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*, 801 F. Supp. 2d 1163, 1182–85 (D. N. M. 2011) (challenge to *potential* standards, in early stages, was not ripe because of "uncertainty what form they will ultimately take if and when they are submitted for approval").  *See also R.J. Reynolds Tobacco Co. v. U.S. Food and Drug Administration*, 810 F.3d 827, 829 (D.C. Cir. 2016) (challenge to FDA action not ripe where "FDA has not yet issued a rule" and may never issue one); *Volvo North Am. Corp. v. Men's Intern. Professional Tennis Council*, 857 F.2d 55, 64–65 (2d Cir. 1988) (challenge to *potential* rules not ripe).

The claims against NSF are not ripe for judicial review.  NSF's *potential* Standard 441 is still in its early stages, continuing to develop through debate at the JC level and underlying TG's.  It is uncertain if Standard 441 will ever be adopted

by the JC; and, if it is, what form it would take. Moreover, to date, no official action has been requested of the JC, including the question whether to adopt Standard 441 or make any changes to existing Standard 40. The TG for *potential* Standard 441 conducted a "straw ballot," but, as explained, this was done in the TG's advisory capacity and does not constitute final action by the JC. Thus, Geomatrix's claims relating to *potential* Standard 441 or *potential* changes to Standard 40 are not ripe, as they depend on far too many "ifs" and "whens" that may never occur or that may occur differently than anticipated. *See OverDrive, Inc.*, --- F.3d ---, 2021 WL 402095, at *3. Because claims relying on these *potential* changes are not concrete, it follows that Geomatrix has not established a constitutional "injury in fact" to support standing. *See, e.g.*, *Metcalf v. National Petroleum Council*, 553 F.2d 176, 184, 188 (D.C. Cir. 1977) (plaintiffs lacked standing to challenge composition of advisory committee where no action taken based on committee recommendations).

### 3. Geomatrix unilaterally abandoned, mooted, and does not have an injury in fact, relating to Standard 40

Mootness is an Article III inquiry that determines if there is a live "case or controversy." *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does."). Article III requires courts to "adjudicate only actual, ongoing cases or controversies." *Lewis v.*

*Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  Courts lack jurisdiction to decide moot questions.  *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

Constitutional standing requires a "requisite personal interest that must exist at the commencement of the litigation. . . ."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997).  The plaintiff must establish constitutional standing at all stages of the litigation.  *White*, 601 F.3d at 551.  The "irreducible constitutional minimum" to establish Article III standing requires a plaintiff to have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v.* Robins, 136 S. Ct. 1540, 1547 (2016).  "Self-inflicted" injuries fail the second prerequisite—that the injury is "fairly traceable" to the plaintiff's injury and the complained-of conduct of the defendant.  *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020).

Geomatrix contends that: (1) by NSF allowing the ongoing discussions whether to test ATU and T&D systems differently, NSF has denied that T&D systems can be properly certified under Standard 40; and (2) NSF has undermined Standard 40 certification for T&D systems in the eyes of state regulators.  *See* ECF No. 1, at PageID.126–30, ¶¶352–63.  This has purportedly led to Geomatrix's inability "to enter new markets," obtain "state approvals," or "sell its products in the relevant markets."  *Id.* at PageID.30, ¶364.  But, Geomatrix's complaint omits the

critical fact that *it voluntarily withdrew from Standard 40 certification in 2018*, when it notified NSF in writing that "Geomatrix does not intend to continue its active certification with NSF." **Ex. 4**.[5] Thus, any "injury" Geomatrix sustained is tied to its voluntary withdrawal from Standard 40 certification and is not "fairly traceable" to any NSF action. *See, e.g.*, *Buchholz*, 946 F.3d at 867 (harm was "self-inflicted").

Geomatrix's alleged "injury" also is precluded by *Noerr-Pennington* antitrust immunity because it is tied to governmental, not NSF, action. *Mass. School of Law at Andover, Inc. v. Am. Bar Assoc.*, 937 F. Supp. 435 (E.D. Pa. 1996) (ABA action not accrediting law school barred by *Noerr-Pennington* because any "injury" tied to states' requirements for ABA certification); *Haswood v. Am. Ploygraph Ass'n*, No. 14-00253, 2015 WL 846420 (D. Ariz. Feb. 26, 2015) (American Polygraph Association's decision to decertify plaintiff did not proximately cause any injury; it was the state board's refusal to provide license to plaintiff without accreditation).

Geomatrix alleges that "the majority of states have incorporated NSF standards into their codes; thus, requiring NSF certification or successful testing to NSF standards, prior to eligibility to offer products for sale in the state." ECF No. 1 at PageID.15; ¶39. It further alleges that "[c]ertain of NSF's standards have been adopted by and become a part of federal and state law," *id.* at PageID.22, ¶66,

---

[5] This evidence is relevant to the subject matter jurisdiction inquiry under Federal Rule of Civil Procedure 12(b)(1), not the Rule 12(b)(6) arguments below.

including that at least 38 different states have adopted NSF/ANSI Standard 40 into their "statutes, state administrative codes, or mandatory technical standards and guidelines" and many other states rely on it, *id.* at PageID.26–27; ¶¶ 78–79. *See also* ECF 1 at PageID.31; ¶91. In other words, the "injury" Geomatrix alleges is that it needs *state approvals* to compete. Geomatrix made this point clear when it withdrew its products from Standard 40 certification due to, in its own words, "the uncertainty surrounding which, if any, **states** will allow use of certified open bottom technologies." **Ex. 4** at Ex. A (emphasis added). Thus, even if Geomatrix had a cognizable "injury," it arises from *governmental action*, shielded by *Noerr-Pennington* antitrust immunity. Even if statements made about T&D systems to state regulators were allegedly "false" and even *if* NSF itself had made any such statements (which it has not), "*Noerr-Pennington* . . . precludes antitrust liability based on the use of false statements to persuade the government to act." *In re Circuit Breaker Litig.*, 984 F. Supp. 1267, 1275 (C.D. Cal. 1997).

## B.   Many of Geomatrix's Claims are Time-Barred

Assuming *arguendo* that this Court has subject-matter jurisdiction to proceed, which it does not, many of Geomatrix's claims should be dismissed as untimely.

### 1.   The antitrust claim is time-barred

First, the antitrust claim (Count I) is time barred by the governing four-year statute of limitations period. 15 U.S.C. §15b. An antitrust claim accrues at the "time

14

a defendant commits an act that injures the plaintiff's business." *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996) (citation omitted).

Geomatrix admits that the antitrust claim "accrued" over four years ago. For example, Geomatrix alleges that, "[f]or at least the last *five years*, the Defendants have manipulated the standard-setting process by, *inter alia*, making false statements, advancing the false claims, and attempting to exclude or otherwise undermine certain Geomatrix products from existing and proposed standards, all in an effort to prevent Geomatrix from entering the marketplace and competing." ECF No. 1, PageIDs.5–6, ¶11 (emphasis added). Most alleged "facts" and "statements" in support of the antitrust claim occurred well over four years ago. *See id.* at PageIDs.39–42, ¶123 (alleged acts in 2007, 2009, 2014, and 2016, including submission of "Issue Papers" allegedly criticizing T&D systems, appointments of persons to the TGs with alleged conflicts, and discussion and debate about potential different testing criteria for ATU versus T&D systems); PageIDs.54–55, ¶152 (alleged anti-competitive acts occurring in 2014, including submission of "Issue Paper" allegedly criticizing T&D systems, creation of a TG to explore possible different testing criteria for ATU versus T&D systems, and NSF's member suggesting that T&D systems are not reliable in the field). In short, Geomatrix alleges that, at least by 2014, the "conspiracy" took the form of disparaging T&D systems verbally at NSF meetings and through written submissions to NSF, such as

"Issue Papers." *See, e.g.*, *id.* at PageIDs.55, 72, ¶¶152, 190, 193. *See also id.* at PageID.59, ¶160 (alleging T&D systems have been "openly criticized at essentially every meeting of the [JC] and associated [TG's] between 2014 and the present.").

No "continuing antitrust violation" exists to extend or otherwise toll the statute of limitations. For a continuing, new "overt act" to restart the statute of limitations period, "it must 'be a new and independent act that is not merely a reaffirmation of a previous act'; and (2) it must 'inflict new and accumulating injury on the plaintiff.'" *DXS, Inc.*, 401 U.S. at 467 (citation omitted). "Acts that simply reflect or implement a prior refusal to deal, or acts that are merely 'unabated inertial consequences' (of a single act), do not restart the statute of limitations." *Id.*

Here, Geomatrix's complaint makes clear that any "overt acts" that allegedly occurred in the past four years are merely a "reaffirmation of a previous act"—the alleged "conspiracy" to disparage T&D systems that accrued long over four years ago. For example, the "acts" Geomatrix alleges in the past four years are the same type of acts allegedly dating back to 2014 or earlier—the alleged disparagement of T&D systems verbally at NSF meetings and through written submissions, such as Issue Papers, or the appointment of persons with alleged conflicts of interest to the JC and TGs. *See, e.g.*, ECF No. 1 at PageID.56, ¶155 (presentation of a 2017 Issue Paper allegedly advocating for the removal of T&D systems from Standard 40 and including them in a yet-to-be implemented new NSF Standard); PageIDs.57–59,

¶159 (alleged disparaging statements about T&D systems, and that they should be tested under different criteria than ATU systems, at NSF JC meetings in 2017 and 2019); PageID.73, ¶195 (Issue Paper submitted to NSF allegedly criticizing and disparaging T&D systems in 2020, statements allegedly made critical of T&D systems at NSF meetings, and proposal for the creation of an "open bottom" TG to allegedly discredit the testing and certification of T&D systems). This is the same "open[] critici[sm]" of T&D systems that allegedly began in 2014. *See* ECF No. 1 at PageID.59, ¶160. Thus, the alleged acts within the past four years are not "new and independent," but "simply reflect or implement a prior [alleged] refusal to deal."

### 2.     The unfair competition claims are time-barred

The unfair competition claims (Counts II and IV) are subject to a three-year statute of limitation. *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, No. 05-60087, 2007 WL 2649244, at *3 (E.D. Mich. Sept. 10, 2007); *AWGI, L.L.C. v. Atlas Trucking Co., L.L.C.*, 381 F. Supp. 3d 832, 852 (E.D. Mich. 2019); *J & M Sidewinders, Inc. v. Valeo Sylvania, L.L.C.*, No. 05-40094, 2005 WL 1801987, at *2 (E.D. Mich. July 28, 2005); *Bliss Clearing Niagara, Inc. v. Midwest brake Bond Co.*, 339 F. Supp. 2d 944, 973 (W.D. Mich. 2004). Geomatrix alleges the same underlying conduct as the antitrust claim: that NSF allegedly participated in the disparagement of T&D systems. *See* ECF No. 1 at PageIDs.131–33, 137; ¶¶367, 385. At the latest, these claims accrued in 2014 and are now time-barred.

### 3.    The business defamation claim is time-barred

The business defamation claim (Count VII) is barred by a one-year statute of limitation.  Mich. Comp. Laws §600.5805(11).  The purported "false statements" Geomatrix contends NSF made or published[6] are outside the one-year statute of limitations.  *See* ECF No. 1 at PageID.54–55, ¶¶152–53 (alleged false statements in 2014); *id.* at PageID.87, ¶229 (alleged false statements in 2017); *id.* at PageID.100, ¶¶273–74 (alleged false statements in 2019).  The purported nature of the statements has been the same since Geomatrix claims the "disparagement" of T&D systems began, by at least 2014.  ECF No. 1 at PageID.59, ¶160 (alleging that T&D systems "were openly criticized at essentially every meeting of the [JC] and associated [TG's] between 2014 and the present.").  At the latest, these allegedly disparaging statements accrued in 2017.  *See* ECF No. 1 at PageID.71, ¶188.

### 4.    The tortious interference claim is time-barred

The tortious interference claim (Count IX) is time barred by a three-year statute of limitations. Mich. Comp. Laws §600.5805(2).  The basis for this claim is that Defendants allegedly disparaged Geomatrix's T&D systems causing it to lose prospective customers.  ECF No. 1 at PageID.149–50, ¶¶437–42.  But this alleged

---

[6] NSF did not make or publish any statements.  It simply provides an open forum.

conduct accrued as early as 2007 and as late as 2014. *See supra*, at p. pp 14–15.[7]

## C.    Geomatrix Fails to State Any Plausible Claim Against NSF

### 1.    Geomatrix fails to plead a plausible antitrust claim

#### a.    Geomatrix has not, and cannot, allege a *per se* violation

Geomatrix does not plausibly allege a *per se* antitrust violation against NSF, nor can it replead to do so. First, the *per se* doctrine must be used "reluctantly and infrequently," and there is an "automatic presumption in favor of the rule of reason standard" over the *per se* doctrine. *Ogden v. Little Caesar Enters., Inc.*, 393 F. Supp. 3d 622, 633 (E.D. Mich. 2019) (collecting cases). Geomatrix has not alleged anything to overcome this presumption.

Second, the entirety of the conduct Geomatrix alleges against NSF arises in NSF's role as a SSO and certification entity. Courts have held that an SSO's activities in certifying (or not certifying) a product, or the way it proceeds with the standard setting process, is *not* presumptively "anticompetitive and does not result in a "*per se*" violation of the antitrust laws. *In re Circ. Breaker Litig.*, 984 F. Supp. 1267 (C.D. Cal. 1997); *Consolidated Metal Prods. Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 291 (5th Cir. 1988); *Plant Oil*, 801 F. Supp. 2d at 1194; *Greater Rockford Energy and Tech Corp. v. Shell Oil Co.*, 998 F.2d 391, 396 (7th Cir. 1993).

---

[7] The tolling agreement with NSF that ran from June 20, 2020 to November 30, 2020, does not save any of Geomatrix's claims from dismissal because all were time-barred even before the tolling agreement. **Ex. 5**, Declaration of J. Steiger.

### b. Geomatrix fails to plausibly allege an antitrust "conspiracy" or "unlawful agreement"

Whether judged as a *per se* claim, or under the quick look rule of reason or traditional rule of reason, Geomatrix fails to sufficiently plead a plausible "conspiracy" or "agreement;" and, as such, has not plausibly alleged a Section 1 or 2 antitrust claim. The cases holding that SSO's violate the antitrust laws due to an illegal "conspiracy" are "few and far between" and require antitrust plaintiffs to meet exacting standards that Geomatrix has not adequately pled, and simply cannot plead here. *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 435 (4th Cir. 2015).

A plaintiff must "allege the existence of the conspiracy in more than 'vague and conclusory terms.'" *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) (citation omitted). This requires more than "bare allegations without any reference to the 'who, what, where, when, how or why"; otherwise, the pleading does "not supply facts adequate to show illegality. *Id.* at 437 (citing *Twombly*, 550 U.S. 544).

Geomatrix does not allege with any specificity the "who, what, where, when, how or why" that would support a plausible conspiracy. The crux of this purported "conspiracy" is that, "[f]or at least the past last five years, the Defendants have manipulated the standard-setting process by, *inter alia*, making false statements, advancing the false claims, and attempting to exclude or otherwise undermine certain Geomatrix products from existing and proposed standards, all in an effort to

20

prevent Geomatrix from entering the marketplace and competing." ECF No. 1, PageID.5–6, ¶ 11. But Geomatrix does not allege, beyond conclusory allegations, when and how the conspiracy was formed, with whom NSF conspired, the precise nature of the conspiracy, or the other necessary specifics to establish a "conspiracy."

The crux of the "conspiracy" and "unlawful agreement" allegations are as follows: (1) NSF has allowed Geomatrix's competitors (as well as Geomatrix) to participate in the standard setting process and to openly debate different technologies; (2) the discussion to date has led to criticism of T&D systems; (3) Geomatrix does not agree with the criticism of T&D systems (and has been vocal about its disagreement), (4) JC voting members from ATU companies outnumber those from T&D companies; and (5) as a result, there "must be" a conspiracy. These allegations are insufficient. *See, e.g.*, *Advanced Tech. Corp. v. Instron, Inc.*, 925 F. Supp. 2d 170 (D. Mass. 2013) (allegations that establish nothing more than "unilateral reaction of each [manufacturer defendant] intent on keeping its . . . dominance," are insufficient to plausibly establish a "conspiracy"); *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 878 (7th Cir. 2015) (participation in trade associations irrelevant to alleged "conspiracy."); *Twombly*, 550 U.S. at 556 (there must be allegations of parallel conduct as opposed to independent action).

Similar allegations against SSOs have been consistently rejected as insufficient to allege a plausible "conspiracy" or "unlawful agreement." *See, e.g.*,

*Plant Oil.*, 801 F. Supp. 2d at 1193, 1196 (rejecting as implausible "common membership," objections to plaintiff's products, or procedural meeting irregularities as the basis antitrust "conspiracy" against a SSO); *Lai v. USB-Implementers Forum, Inc.*, No. 14-05301, 2015 WL 12746705 (C.D. Cal. March 11, 2015) (rejecting naked assertions of common membership as sufficient to allege a "conspiracy"); *Thermal Design, Inc. v. Am. Society of Heating*, No. 07-C-765, 2013 WL 12094813, at *21 (E.D. Wis. June 12, 2013) (explaining that "[m]embership in a trade association and participation in its activities, without something more, does not tend to exclude the possibility of legitimate, legal activity."); *Process Controls Intern., Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912 (E.D. Ma. 2010) (dismissing section 1 and 2 antitrust claims for failing to plausibly allege a "conspiracy.").

Most courts have rejected a party's reliance on the cases cited in the complaint, see ECF No. 1, PageID.4–5, as the basis for an antitrust claim against an SSO. *See, e.g.*, *Plant Oil*, 801 F. Supp. 2d at 1190 (rejecting the plaintiff's reliance on *American Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) and finding that the complaint did not plausibly plead an antitrust "conspiracy"); *Lai*, 2015 WL 12746705, at *5, *6 (rejecting the idea that *Hydrolevel* "address[ed] or appl[ied] any test for stating a claim against a standard making organization" and holding that the plaintiff did not plausibly allege a conspiracy); *SD3 LLC*, 801 F.3d at 435, 436 (citing *Hydrolevel*, *Allied Tube & Conduit Corp. v.*

*Indian Head, Inc.*, 486 U.S. 492 (1988) and *Broadcom Corp v. Qualcomm Inc.*, 501 F.3d 297 (3d. Cir. 2007) and explaining that, unlike these cases, "[i]n the usual case, neither the standard-setting organization nor its participants will run afoul of antitrust law when they use ordinary processes to adopt unexceptional standards.").

In the end, Geomatrix's "conspiracy" theory is that: (1) its competitors, which manufacture competing ATU systems, are participants in NSF's standards setting processes, including at the JC and TG levels; and (2) because Geomatrix's competitors are advocating for different testing criteria for T&D versus ATU systems (allegedly without a technical justification), there "must be" an illegal antitrust conspiracy with NSF. But even if a decision is ever made to implement different testing criteria, and even if that decision "can be called 'wrong,' that mistake alone does not indicate concerted action to manipulate the result." *SD3 LLC*, 801 F.3d at 437. Geomatrix has not plausibly stated a conspiracy against NSF.

### c.    **Geomatrix does not plausibly allege a "market injury"**

Geomatrix also fails to allege a "market injury" that would permit it to proceed with either a Section 1 or Section 2 antitrust claim. The "foundation of an antitrust claim is the alleged adverse effect on the market." *See Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1014 (6th Cir. 2005). "[T]he Sherman Act was intended to protect competition and the market as a whole, not individual competitors [.] . . Individual injury, without accompanying market-wide injury, does

23

not fall within the protections of the Sherman Act." *Id.* (citations omitted). An "antitrust injury" requires not only proximate cause, but also an injury "of the type the antitrust laws were intended to prevent[,]" i.e. an injury to competition as a whole. *Id.* (citation omitted). Thus, "[b]ecause protecting competition is the *sine qua non* of the antitrust laws, a complaint, alleging only adverse effects suffered by an individual competitor cannot establish an antitrust injury." *Id.* at 1014–15. "Such a heightened standard is required because the relevant antitrust laws 'were enacted for the protection of competition not competitors.'" *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 976 (6th Cir. 2000) (citations omitted).

Geomatrix fatally alleges only *individual* harm, not an actionable "market injury." Geomatrix claims that *its* products and *its* ability to sell them has allegedly been harmed, "all in an effort to prevent Geomatrix from entering the marketplace and competing." *See, e.g.*, ECF No. 1 at PageIDs.5–7, 35, 61; ¶¶11–14, 109, 165. Federal courts do not sit as "boards of automatic review" to address such alleged individual harm. *Consolidated Metal Prods.*, 846 F.2d at 297.

For these reasons, courts have overwhelmingly dismissed cases against SSO's, such as NSF, for failing to plausibly allege an antitrust "market injury." *See, e.g.*, *Lai*, 2015 WL 12746705, at *7 (allegations that a refusal to certify plaintiff's product resulted in an injury "are . . . fundamentally injuries to Plaintiff's own business, rather than to overall competitive conditions."); *Thermal Design*, 2013 WL

24

12094813, at *17 (individual injury without a showing of "diminishing competition in the larger market" insufficient to establish market injury); *Plant Oil*, 801 F. Supp. 2d at 1196 (no market injury where influential standard was not *required* to compete in the market).  This is especially true where, as here, Geomatrix "largely complains that it could not use the standard-setting process to impose its own product on everyone else." *SD3,* LLC, 801 F.3d at 437.  In this situation, "[t]he anticompetitive harms of a 'refusal to impose' are much harder to identify." *Id.* at 437–38.

### d.  Geomatrix does not plausibly allege a Section 2 claim

The Section 2 antitrust claim also fails because Geomatrix does not plausibly allege a "monopoly" or intent to monopolize.  *See, e.g.*, *RXUSA Wholesale, Inc. v. Alcon Labs*, 391 F. App'x 59, 61 (2d Cir. 2010); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992).  Geomatrix also pled away any plausible Section 2 claim by alleging a "conspiracy" among multiple manufacturers.  A Section 2 monopolization claim cannot be based on a purported "shared monopoly" among multiple defendants.  *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 926 F. Supp. 2d 36, 45-46 (D.D.C. 2013).

### 2.  The remaining claims fail for additional reasons

### a.  Geomatrix fails to state claims for unfair competition, business defamation, or fraud

Counts II and IV allege unfair competition under federal and Michigan state law.  Count VII alleges business defamation.  Count VIII alleges fraud.  The crux of

all these claims is that NSF allegedly allowed its members to disparage Geomatrix's T&D systems through speech at meetings and publication of "Issue Papers" critical of T&D systems. However, NSF allowing members to use an open forum to discuss standards, testing criteria, and products is protected First Amendment expression. *See, e.g.*, *Haswood*, 2015 WL 846420, at *5 (holding that the American Polygraph Association's decision to "decredit" the plaintiff school was "constitutionally protected expression[] of opinion [under the First Amendment]. . . ."); *Mass. School of Law*, 937 F. Supp. at 445 (First Amendment protects an association stating its position, even if a company is "stigmatized" because of such statements). SSO's and certification entities "may reasonably believe that they can do their job properly (a job that benefits consumers) only if all interested parties are allowed to present proposals, frankly present their views, and vote." *SD3 LLC*, 801 F.3d at 436 (citation and quotations omitted). Geomatrix fails to state any actionable unfair competition, business defamation, or fraud claim against NSF. Geomatrix is asking this Court to sit as a "board of review" and "content editor" of all standard setting and certification activities, which is improper. *Consolidated Metal Prods.*, 846 F.2d at 297.

Moreover, these claims fail for additional reasons, including that: (1) the unfair competition claims are grounded in the Lanham Act, an inapplicable statute that applies to trademark claims, and (2) Geomatrix has not plausibly alleged

specific statements made by NSF that call into question Geomatrix's products.  NSF

agrees with and joins co-defendant Hoot Systems, LLC's arguments on these points.

### b.    Geomatrix fails to state a claim under the MCPA

The Michigan Consumer Protection Act ("MCPA") does not apply.

Geomatrix alleges that NSF has made and published false statements about products

that Geomatrix sells commercially.  The MCPA is meant to protect a certain class of

consumers who purchase personal, family, or household goods.  *See, e.g.*, *Nagle*

*Indus., Inc. v. Ford Motor Co.*, 173 F.R.D. 448, 457 (E.D. Mich. 1997) ("The

Michigan Consumer Protection Act is designed to protect a certain class of

consumers and thus does not apply unless the acts complained of involve the sale of

goods, services, or property used primarily for personal, family or household

purposes." (citation omitted).  Alleged harm to Geomatrix's ability to sell its T&D

systems commercially for business purposes does not fall within the MCPA's scope.

### c.    Geomatrix does not plausibly plead tortious interference

Geomatrix's tortious interference claim (Count IX) fails to plausibly identify

any "prospective business expectancies" or the "intent" element of such a claim.  All

Geomatrix pleads is that NSF has allowed Geomatrix's competitors to openly

discuss and debate the technology involved in T&D systems through NSF's

standards setting process.  Nothing about this plausibly pleads tortious interference,

including because Geomatrix has not identified any business expectancies beyond mere speculation, or any intentionally wrongful action undertaken by NSF.

To plead a claim for tortious interference with prospective economic advantage, "[t]he expectancy must be a reasonable likelihood or probability, not mere wishful thinking.'" *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361, 377 (1984); *P.T. Today, Inc. v. Office of Fin. And Ins. Servs.*, 270 Mich. App. 110, 151 (2006); *Schipani v. Ford Motor Co.*, 102 Mich. App. 606, 621–23 (1982). Moreover, "[t]he plaintiff must plead the 'intentional interference' element with specificity, which requires the pleader to 'allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the . . . business relation of another.'" *Advanced Network Sol., Inc. v. Alexander*, No. 254374, 2006 BL 174986, at *1 (Mich. Ct. App. Feb. 21, 2006) (citing *CMI Intern., Inc. v. Intermet Intern. Corp.*, 251 Mich. App. 125, 131; 649 N.W.2d 808 (2002)).

Geomatrix's threadbare and conclusory allegations against NSF do "little more . . . than to plead the elements of the claim, supplemented by various conclusory statements," which "does not raise the claim above a level of speculation." *Dorman Prods., Inc. v. Dayco Prods., LLC*, 749 F. Supp. 2d 630, 641 (E.D. Mich. 2010) (dismissing tortious interference claim). Geomatrix does not establish any reasonably likely or probable customer that it lost. Nor has Geomatrix

alleged anything beyond the actions of its competitors motivated by legitimate business reasons: to sell their ATU systems. *See, e.g.*, *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 442 (6th Cir. 2014). This claim should be dismissed.

### d. The promissory estoppel counts fail to state a claim

Geomatrix alleges that NSF has published an "Antitrust Guide" and "Standards Development Policy," and that Geomatrix has relied, and expected NSF to follow, the publications. These claims are not plausible.

Promissory estoppel under Michigan law requires pleading and proving a ***clear*** and ***definite*** promise was made by the defendant. *See DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 385 (6th Cir. 2015) ("As the Michigan Supreme Court explained, 'the sine qua non of the theory of promissory estoppel is that the promise be clear and definite.'") (citation omitted). Moreover, reliance must be *reasonable*. *State Bank of Standish v. Curry*, 442 Mich. 76; 500 N.W.2d 104, 107 (Mich. 1993). A "clear and definite promise" is defined as a "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Curry*, 500 N.W.2d at 108.

Geomatrix cannot identify any "clear and definite promise" made by NSF to Geomatrix in NSF's Antitrust Guide and Standards Development Policy. Geomatrix is not even mentioned in these publications. Geomatrix's reliance on general statements in NSF's publications does not plausibly plead a "clear and definite"

promise made by NSF to Geomatrix as a matter of law. *See, e.g.*, *DBI Invs., LLC*, 617 F. App'x at 385–86 (general statements about the defendant's investment philosophy were "merely descriptions" and did not amount to a "clear and definite commitment to make any particular investment decision in a certain way. . .").

## V.    CONCLUSION

For the reasons set forth above, Geomatrix's complaint should be dismissed against NSF in its entirety.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By: /s/ Jonathan F. Karmo

Jon R. Steiger (P35505)
Patrick M. McCarthy (P49100)
Jonathan F. Karmo (P76768)
Attorneys for Defendant NSF International, Only
450 West Fourth Street | Royal Oak, MI 48067
pmm@h2law.com| jrs@h2law.com| jfk@h2law.com
248-645-1483

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 10, 2021, I caused the foregoing document to be filed with the Clerk of the Court via the Court's electronic filing system, which will cause notice of same to be sent to all counsel of record.

By: <u>/s/ Jonathan F. Karmo            </u>

1