# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GEOMATRIX, LLC,

     Plaintiff,

v.

NSF INTERNATIONAL, BIOMICROBICS, INC., HOOT SYSTEMS, LLC, JAMES BELL, and RONALD SUCHECKI

     Defendants.

Case No. 20-13331

Hon. Robert Cleland

Magistrate Judge R. Steven Whalen

---

## CONCURRENCE AND JOINDER IN CO-DEFENDANT NSF INTERNATIONAL'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(B)(1) AND FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6) AND SEPARATE MOTION TO DISMISS BY HOOT SYSTEMS, LLC UNDER FED. R. CIV. P. 12(B)(6)

Defendant Hoot Systems, LLC ("Hoot") hereby gives notice of its Concurrence and Joinder in Co-Defendant's NSF International's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1) and Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), ECF. No. 30 ("NSF's Motion"). Hoot states that the facts and law contained within NSF's Motion apply equally to it and therefore incorporates

by reference each and every statement regarding the arguments as to NSF's Motion and brief as though fully set forth herein.[1]

Hoot separately moves for dismissal of Plaintiff's FAC against Hoot in its entirety under Federal Rules of Civil Procedure 12(b)(6) for the reasons set forth in Hoot's accompanying Brief in Support. Hoot's counsel sought concurrence in the relief requested under E.D. Mich. Local Rule 7.1(a), but concurrence was denied.

Dated:   July 9, 2021                                   Respectfully submitted,

                                                        **KERR, RUSSELL AND WEBER, PLC**


                                                        By:  /s/*Fred K. Herrmann*
                                                        Fred K. Herrmann (P49519)
                                                        Matthew L. Powell (P69186)
                                                        Attorney for Defendant
                                                        500 Woodward Avenue, Suite 2500
                                                        Detroit, MI  48226-3427
                                                        (313) 961-0200; FAX (313) 961-0388
                                                        fherrmann@kerr-russell.com
                                                        mpowell@kerr-russell.com

---

[1] To avoid repetition, Hoot separately raises arguments that are only specific to it or in addition to those in NSF's Motion.

# TABLE OF CONTENTS

I.     **Introduction**................................................................................1

II.    **Statement of Alleged Facts**.......................................................3

III.   **Standard of Review**..................................................................4

IV.   **Argument.**..................................................................................5

     A.    The FAC Fails to State a Claim Under Section 1 of the Sherman Act in Count I................................................................................5

         1.    The FAC Fails to Set Forth Factual Allegations Plausibly Suggesting any Antitrust Conspiracy or Unlawful Agreement....................................................6

         2.    There are no allegations that Defendants engaged in parallel conduct that would support a conspiracy claim.............9

         3.    The FAC fails to allege harm to competition. ..........................11

     B.    Geomatrix Fails to State a Viable Claim for Unfair Competition Under the Lanham Act in Count III. ...................................................12

     C.    Geomatrix Fails to State a Viable Claim for Unfair Competition Under Michigan Common Law in Count IV. .....................................14

     D.    The FAC fails to allege a viable Business Defamation/ Injurious Falsehood/ Product Disparagement Claim Against Hoot in Count VII.................................................................14

     E.    The FAC Fails to State a Claim for Interference with Prospective Economic Advantage in Count IX. .................................15

V.     **Conclusion and Relief Sought**....................................................**18**

## Statement of the Issues

**Issue #1:** 1. Geomatrix's FAC fails to set forth factual allegations plausibly suggesting any antitrust conspiracy, unlawful agreement, or parallel conduct. To assert viable claims under Section 1 of the Sherman Act a plaintiff must set forth factual allegations that plausibly allege an explicit agreement or parallel conduct consistent with a conspiracy. Every allegation in the FAC is either mere conclusion, irrelevant allegation, or is at least as consistent with unilateral conduct as conspiratorial conduct, and therefore does not rise above "neutral territory."

Should the Court dismiss Geomatrix's antitrust claims against Hoot?

**Issue #2:** Under the rule of reason, a plaintiff must show harm to competition in the relevant market. A plaintiff can show direct harm to competition, such as actual proof of reduced output or increased prices.  Geomatrix has failed to allege any harm to competition, only purported harm to its ability to market its product as certified even though it alleges that there are two other manufacturers of similar products that are certified.

Should the Court dismiss Geomatrix's antitrust claims against Hoot for this additional reason?

**Issue #3:**  To assert an unfair competition claim under the Lanham Act and Michigan common law, a plaintiff must establish that a defendant's trademark creates a likelihood of confusion regarding the origin of goods or services offered by the respective parties. The FAC is completely devoid of any allegations that Hoot's trademark creates a likelihood of confusion with Geomatrix's products.

Should the Court dismiss Geomatrix's unfair competition claims against Hoot?

**Issue #4:** Geomatrix has not set forth allegations that describe Hoot's intent to result in harm or identified any statement by Hoot that calls into question the quality of Geomatrix's product, and there is no allegation that plausibly supports the interference with an economically advantageous relationship required for a viable claim.

Should the Court dismiss Geomatrix's business defamation claim against Hoot?

**Issue #5:** To prevail on a tortious interference with a business relationship or expectancy claim under Michigan law, a plaintiff must allege, among others, the existence of a valid business relationship or expectancy, and intentional interference causing or inducing a termination of the relationship or expectancy.

Geomatrix's FAC fails to identify a single customer with whom Geomatrix had an identifiable business expectancy, or any statement by Hoot that could plausibly interfere with that expectancy.

Should the Court dismiss Geomatrix's tortious interference claim against Hoot?

## Controlling or Most Appropriate Authorities

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366 (6th Cir. 2003)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*FTC v. Indiana Federation of Dentists*, 475 U.S. 447 (1986)

*Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436 (6th Cir. 2014)

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)

*Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341 (Mich. Ct. App. 1984)

## Statutes

15 U.S.C. § 1

15 U.S.C. § 1125

## Rules

FED. R. CIV. P. 12(b)(6)

## Index of Authorities

**Cases**

*Am. Council of Certified Podiatric Physicians & Surgeons v.*
  *Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999) ...............11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 4, 5, 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 570 (2007).............................. 4, 6, 9

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)..............................11

*Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*,
  73 F. Supp. 2d 829 (W.D. Mich. 1999) ...........................................................7

*FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986). ...............................................11

*Goscicki v. Custom Brass & Copper Specialties, Inc.*,
  229 F. Supp. 2d 743 (E.D. Mich. 2002) ................................................. 13, 14

Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2 (1984) ...............................11

*Kollenberg v. Ramirez*, 127 Mich. App. 345; 339 N.W.2d 176 (1983) ........... 14, 15

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*,
  502 F.3d 504 (6th Cir. 2007) .........................................................................14

*Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) ............................................6

*Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*,
  856 F.3d 416 (6th Cir. 2017) .........................................................................13

*Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436 (6th Cir. 2014) .................. 16, 17

*Schachar v. Am. Acad. of Ophthalmology, Inc.*,
  870 F.2d 397 (7th Cir. 1989) .................................................................. 7, 8, 9

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
  552 F.3d 430 (6th Cir. 2008) ...........................................................................6

*Trepel v. Pontiac Osteopathic Hospital*, 135 Mich. App. 361;
  354 N.W.2d 341 (1984) .................................................................................17

**Statutes**

15 U.S.C. § 1 ......................................................................................................5

15 U.S.C. § 1125 ...............................................................................................13

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GEOMATRIX, LLC,

      Plaintiff,

v.

NSF INTERNATIONAL, BIOMICROBICS, INC., HOOT SYSTEMS, LLC, JAMES BELL, and RONALD SUCHECKI

      Defendants.

Case No. 20-13331

Hon. Robert Cleland

Magistrate Judge R. Steven Whalen

---

## BRIEF IN SUPPORT OF CONCURRENCE AND JOINDER IN CO-DEFENDANT NSF INTERNATIONAL'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(B)(1) AND FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6), <u>AND SEPARATE MOTION TO DISMISS BY HOOT SYSTEMS, LLC UNDER FED. R. CIV. P. 12(B)(6)</u>

## I.  Introduction.

Geomatrix, LLC's ("Geomatrix") First Amended Complaint ("FAC") is as fatally flawed as the original.  Instead of addressing the myriad factual deficiencies in its original complaint, Geomatrix merely papered over those factual deficiencies with a thin veneer of conclusions and irrelevant allegations against non-parties. The FAC continues to take normal, garden-variety procedures and actions that occurred during standard setting organization meetings and turn them into "conspiracy" claims. Geomatrix, however, fails to set forth any *factual* allegations that support its myriad claims. Those factual deficiencies are especially glaring

when it comes to Hoot, which are based either on stale allegations well past the statute of limitations or innocuous actions or statements by Hoot's former Vice-President who had volunteered his time in an individual capacity to sit on various NSF committees.

Instead of pleading facts, Geomatrix relies on rote recitations of the elements of the sundry claims and colorful language to impugn the normal policies and procedures of a standard setting organization and the volunteers that participated in the various committees. Geomatrix's negative gloss on the facts cannot turn protected, legal conduct into something it is not – a violation of any federal or state law. Because Geomatrix has failed to allege an illegal agreement, or identified any other actionable conduct, its amended complaint must be dismissed in its entirety with prejudice.

Further, for the additional reasons stated in NSF International's Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1) and Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), ECF. No. 30 ("NSF's Motion"), Geomatrix's claims must be dismissed.[2] The facts and law contained within NSF's Motion apply equally to Hoot, and therefore Hoot incorporates by reference each and every statement

---

[2] Hoot relies upon the law and arguments raised in NSF's Motion for dismissal of Geomatrix's claim under the Michigan Consumer Protection Act in Count V against NSF for dismissal of Geomatrix's Michigan Consumer Protection Act claim against Hoot in Count VI.

regarding the arguments as to NSF's Motion and brief as though fully set forth here.  Accordingly, Hoot also concurs in and joins NSF's motion to dismiss.

## II.   Statement of Alleged Facts.

Geomatrix filed a kitchen sink complaint alleging a host of inapplicable and unsupported claims ranging from federal antitrust and unfair competition to violation of the Michigan Consumer Protection Act and tortious interference. ECF No. 1 ("Complaint"). After facing multiple motions to dismiss the Complaint, Geomatrix filed a First Amended Complaint ("FAC") that did not cure the fatal deficiencies in the Complaint.  ECF No. 24.

The claims against Hoot all stem from the protected speech of Hoot's former president, Ronald Suchecki ("Suchecki") made during NSF committee meetings.[3] Importantly, there are no allegations of direct conduct by Hoot in the FAC and none of the statements attributed to Mr. Suchecki are alleged to have been directed at Geomatrix specifically. To the contrary, Mr. Suchecki is only alleged to have raised potential issues with a type of wastewater treatment in general terms. See, e.g., FAC ¶¶145, 183-186, 188, 330. To add insult to injury, most of the statements Geomatrix complains of were made nearly a decade ago, rendering those allegations incapable of supporting any of its claims due to the statutes of limitation. See, FAC ¶¶145, 183-187, 330.

---

[3] See, NSF Motion at pp. 33-34.  ECF No. 30 PageID.614-615.

In essence, Geomatrix alleges that Hoot and Suchecki were "agents/apparent agents of NSF" that "colluded" to make allegedly disparaging statements about a type of product Geomatrix produces – without naming Geomatrix's products by name – through proposals and issue papers circulated in an NSF committee that set standards for wastewater treatment. This is the sum and substance of the allegations against Hoot. None are actionable. In fact, Geomatrix does not allege how NSF and its agents could plausibly collude. Nor could it because such an allegation would violate fundamental tenets of agency law.

Although the FAC spans 497 paragraphs over 167 pages, it is littered with conclusions and there is not a single factual allegation that supports any of its claims against Hoot. Indeed, as Geomatrix alleges, its FAC is based on theory and conjecture about its products and mere sales puffery by Defendants. FAC ¶¶ 33, 36.  For the reasons stated below, and in NSF's Motion, Hoot respectfully requests that the Court dismiss the FAC in its entirety with prejudice.

## III.   Standard of Review.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 at 570 (2007)). A "claim is facially plausible when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. While the complaint's allegations are accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In deciding a motion to dismiss, a court must take the allegations in a complaint to be true and based on those allegations, determine whether the plaintiff has stated a claim. However, allegations that are naked assertions of legal conclusions are not entitled to this treatment. *Id*. at 678.

In explaining its rationale for the standard, the Court expressed concern with expensive discovery that came with complex antitrust cases. It noted defendants facing enormous discovery costs were inclined to settle even weak cases against them. The Court stressed the importance of allowing only those claims to proceed that actually suggested a conspiracy to avoid burdensome discovery that did not result in any useful evidence. *Twombly*, 550 U.S. at 559. *Twombly* and *Iqbal* encourage judges to rely on common sense and judicial experience in deciding if a claim is plausible.

## IV.   Argument.

### A.   The FAC Fails to State a Claim Under Section 1 of the Sherman Act in Count I.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. The Supreme Court has interpreted this statute

"to outlaw only *unreasonable* restraints." *Ohio v. American Express Co.*, 138 S.
Ct. 2274, 2283 (2018) (citation omitted). The FAC here fails to allege facts
supporting any claim under the Sherman Act.

        **1.**    **The FAC Fails to Set Forth Factual Allegations Plausibly
Suggesting any Antitrust Conspiracy or Unlawful
Agreement.**

"Because § 1 of the Sherman Act does not prohibit all unreasonable
restraints of trade...but only restraints effected by a contract, combination, or
conspiracy...the crucial question is whether the challenged anticompetitive
conduct stems from independent decision or from an agreement, tacit or express."
*Twombly*, 550 U.S. at 553 (citation omitted; emphasis added). Thus, "[a] plaintiff
must allege enough factual matter ... to suggest that an agreement was made, and
an allegation of parallel conduct and a bare assertion of conspiracy will not
suffice." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430, 434 (6th Cir. 2008). Geomatrix offers nothing other than the generic
allegation that Defendants' "*attempted* exclusion of Treatment and Dispersal
Systems, and disparagement of *such technology*" through "their conduct with the
positions of authority on the Joint Committee which they held and the task groups
they control" as the basis of an agreement for its Section 1 claim. FAC ¶383 (ECF
No. 24) (emphasis added).  This allegation is insufficient. Noticeably absent is any
alleged direct evidence of an agreement between any of the Defendants, much less

who was involved in those discussions, when and where such discussions took place, or the substance of any such "agreement."  As a result, Geomatrix's claims fail at the most basic level.

Moreover, as aptly put by Judge Easterbrook for the U.S. Court of Appeals for the 7th Circuit: "There can be no restraint of trade without a restraint." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 397 (7th Cir. 1989); *accord*, *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 73 F. Supp. 2d 829, 839 (W.D. Mich. 1999), *aff'd,* 244 F.3d 521 (6th Cir. 2001) (discussing and applying *Schachar* in a related context.) As it did in *Schachar*, "[t]hat truism decides this case."

In *Schachar*, a group of ophthalmologists brought a claim against the American Academy of Ophthalmology (the "AAO") for violation of antitrust laws when the AAO labeled radial keratotomy "experimental" and issued a press release urging "patients, ophthalmologists and hospitals to approach [radial keratotomy] with caution until additional research is completed." *Id.* at 398. The ophthalmologists brought their claim arguing, as Geomatrix does here, that statements and "Issue Papers" "was the upshot of a conspiracy among the Academy's members in restraint of trade." *Id.* The court noted that:

> *All* the Academy did is state as its position that radial keratotomy was "experimental" and issue a press release with a call for research. It did not require its members to desist from performing the operation or associating with those who do. It did not expel or discipline or even

scowl at members who performed radial keratotomies. It did not induce hospitals to withhold permission to perform the procedure, or insurers to withhold payment; it has no authority over hospitals, insurers, state medical societies or licensing boards, and other persons who might be able to govern the performance of surgery.

*Schachar*, 870 F.2d at 398.

In finding that summary judgment would have been appropriate,[4] the court

discussed the rationale for antitrust law:

> Antitrust law is about consumers' welfare and the efficient organization of production.  It condemns reductions in output that drive up prices as consumers bid for the remaining supply. . . . [Violations occur where p]erhaps members boycotted those who fell out of step . . . , or perhaps the producers agreed "not to manufacture, distribute, or purchase certain types of products," . . . .  These enforcement mechanisms are the "restraints" of trade. Without them there is only uncoordinated individual action, the essence of competition.
>
> . . . [On the other hand, w]arfare among suppliers and their different products *is* competition. Antitrust law does not compel your competitor to praise your product or sponsor your work. To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law. . . .

*Id.* at 399–400 (citations omitted).

Addressing the ophthalmologists' arguments, the court acknowledged their

position that "the Academy is in the grip of professors and practitioners who favor

conservative treatment, forever calling for more research (the better to justify the

---

[4] The district court initially denied summary judgment, but defendant prevailed at trial.  On appeal, the circuit court declined to rule on any trial-related errors and, instead, alternatively ruled that the district court was "required . . . to grant the Academy's motion for summary judgment." *Schachar*, 870 F.2d at 399.

academics' requests for grants)," and that "plaintiffs portray themselves as the progressives, disdaining the Academy's fuddy-duddies in order to put the latest knowledge to work." *Id.* at 399. Nevertheless, the court explained, "when a trade association provides information (there, gives a seal of approval) but does not constrain others to follow its recommendations, it does not violate the antitrust laws." *Id.* (citing *Consolidated Metal Products, Inc. v. American Petroleum Institute,* 846 F.2d 284 (5th Cir.1988); *Clamp-All Corp. v. Cast Iron Soil Pipe Institute,* 851 F.2d 478, 486-89 (1st Cir.1988)). Further, "[a]n organization's towering reputation does not reduce its freedom to speak out. . . . The Academy's declaration affected only the demand side of the market, and then only by appealing to consumers' (and third-party payors') better judgment." *Id.* at 400. The *Schachar* court's analysis could not be more on point and forecloses Geomatrix's antitrust claims.

## 2. There are no allegations that Defendants engaged in parallel conduct that would support a conspiracy claim.

In the absence of direct evidence of agreement, the Supreme Court has explained that "[a] statement of parallel conduct . . . needs some setting suggesting the agreement necessary to make out a Section 1 claim; without further circumstance pointing toward a meeting of the minds, an account . . . stays in neutral territory." *Twombly,* 550 U.S. at 557. As explained in *Twombly,* the starting point for a complaint that does not allege direct evidence of agreement is parallel

conduct by the defendants, though that itself is insufficient to state a claim. *Twombly*, 550 U.S. at 556 ("when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action") (emphasis added).

Here, Geomatrix does not even allege parallel conduct that could suggest an anticompetitive agreement. While each Defendant is alleged to have done something that may have had the effect of harming Geomatrix's ability to have its product re-certified under a standard that was not written to encompass its product or under non-existent Standard 441, the conduct alleged is neither parallel nor directed specifically at Geomatrix, only "Treatment and Dispersal Systems" generally. The FAC makes much of the fact that each Defendant "disparaged" Geomatrix's product through standard setting activity. But Geomatrix never alleges that these "Issue Papers" were directed toward Geomatrix in any way, adopted to exclude its product specifically, or even that any of the policies were adopted only after Geomatrix began to offer its product for sale.

Thus, it was incumbent upon Geomatrix to allege facts that were more than merely neutral as between the allegations of conspiracy and individual (even if parallel) conduct. It has failed to do so. Instead, Geomatrix relies on various protected statements made during the standard setting process by its competitors as

evidence of a conspiracy agreement. These "statements" of 2 of 41 competitors does not suffice to show concerted action or even parallel conduct.[5] FAC ¶¶14, 109, 111, 114, 152, 183-188, 195, 222, 382-383. Accordingly, Geomatrix's antitrust claims fail on the most basic level and must be dismissed.

### 3.    The FAC fails to allege harm to competition.

Under the rule of reason, a plaintiff must show that the concerted refusal to deal harmed competition in the relevant market. A plaintiff can show direct harm to competition, such as actual proof of reduced output or increased prices. In *FTC v. Indiana Federation of Dentists*, the Supreme Court found that the Federation's group decision to withhold dental x-rays from insurance companies using them to evaluate patients' claims for benefits resulted in an actual decrease in competition among dentists and sufficed to show harm to competition without an analysis of market power. *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460-61 (1986).

More often, a plaintiff shows harm to competition indirectly by proving the defendant has market power. This is typically done by showing the defendant has high market share (generally at least in excess of 30%). *Jefferson Parish Hosp.*

---

[5] The intracorporate conspiracy doctrine precludes the claim as a matter of law because the individual members of the Joint Committee and NSF are not independent legal entities for purposes of the antitrust claim. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 620 (6th Cir. 1999). See also, *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984). The same holds true for Mr. Suchecki and Hoot. *Id.*

*Dist. No. 2 v. Hyde*, 466 U.S. 2, 26-29 (1984), abrogated on other grounds by *Ill. Tool Works Inc. v Independent Ink, Inc.*, 547 U.S. 28, 31 (2006)). To do so, the plaintiff must first define the relevant product and geographic markets and show that the agreeing firms together possessed market power in the relevant market.

The FAC fails to allege an adequate definition of the relevant market and is utterly devoid of any examination of Hoot's market power, rendering it fatally deficient under federal law.[6] Indeed, Geomatrix admits that there are at least 41 manufacturers of Contained Systems and at least 3 manufacturers of Treatment and Dispersal Systems, two of which have obtained ANSI Standard 40 certification, and the third (Geomatrix) that formerly had ANSI Standard 40 certification. FAC ¶¶ 378-379. Geomatrix's own allegations make its claim that there is reduced competition from its decision to withdraw its products from ANSI Standard 40 certification utterly implausible. FAC ¶¶¶106, 375; NSF Motion at p.6 (ECF No. 30 PageID.587. For this additional reason, its antitrust claims must be dismissed.

### B.  Geomatrix Fails to State a Viable Claim for Unfair Competition Under the Lanham Act in Count III.

Geomatrix also brought an inapplicable claim for unfair competition under § 43 of the Lanham Act. Section 43 provides that:

---

[6] Although Geomatrix notes that there are approximately 41 manufacturers of Contained Systems (FAC ¶ 378), it includes no facts regarding Hoot's individual share of the market for functionally equivalent products.

[a]ny person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...

. . . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Likelihood of confusion is the essence of an unfair competition claim under the Lanham Act. *Goscicki v. Custom Brass & Copper Specialties, Inc.*, 229 F. Supp. 2d 743, 756 (E.D. Mich. 2002). To assert an unfair competition claim under the Lanham Act, a plaintiff must establish that a defendant's "trademark creates a likelihood of confusion regarding the origin of goods or services offered by the respective parties." *Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 424 (6th Cir. 2017) (citing *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997); *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 622–23 (6th Cir. 1996)).

Here, there are no allegations that even touch upon trademark issues, let alone Hoot's use of a confusingly similar trademark that causes confusion regarding the origin of goods or services among the public. The FAC must be dismissed against Hoot as a result.

### C.   Geomatrix Fails to State a Viable Claim for Unfair Competition Under Michigan Common Law in Count IV.

In addition to the reasons set forth in NSF's Motion, the FAC fails to allege sufficient factual allegations against Hoot to support its inapplicable unfair competition claim under Michigan law.  "The applicable standard under Michigan common law for unfair competition claim "is the same as the tests for federal trademark infringement and federal unfair competition" *Goscicki*, 229 F. Supp. 2d at 756. See also, *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 521 (6th Cir. 2007). Accordingly, Geomatrix's failure to assert a viable federal unfair competition claim also dooms its Michigan counterpart, and it too must be dismissed against Hoot.

### D.   The FAC fails to allege a viable Business Defamation/Injurious Falsehood/ Product Disparagement Claim Against Hoot in Count VII.

The court in *Kollenberg v. Ramirez*, 127 Mich. App. 345, 352; 339 N.W.2d 176 (1983) (quoting Restatement (Second) of Torts §623A, at 334) identified the elements of an injurious falsehood claim as:

One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if

> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and

> (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

The *Kollenberg* court explained that:

> Injurious falsehood cases typically concern derogatory or disparaging communications regarding the title to property or its quality. … However, the gist of the tort is some interference with an economically advantageous relationship which results in pecuniary loss rather than an action that directly affects property.

*Kollenberg*, 127 Mich. App. at 352. Geomatrix has not set forth allegations that describe Hoot's intent to result in harm, identified any statement by Hoot that calls into question the quality of Geomatrix's product (only the suitability of certain types of treatment and disposal systems in general without naming Geomatrix specifically to be certified under ANSI Standard 40), and for the reasons discussed in Section E, there is no allegation that plausibly supports the interference with an economically advantageous relationship required for a viable claim. For these additional reasons, Geomatrix's business defamation claim must be dismissed.

## E.   The FAC Fails to State a Claim for Interference with Prospective Economic Advantage in Count IX.

In addition to the antitrust claims, Geomatrix asserts a bare-bones claim of "interference with a prospective economic advantage" against each of the

Defendants. To prevail on a tortious interference with a business relationship or expectancy claim under Michigan law, a plaintiff must allege: "(i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage." *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (citation omitted). The FAC fails to meet these requirements.

Geomatrix does not allege facts establishing any intentional interference by Hoot, or any other Defendant, with Geomatrix's prospective business relationships. "Intentional interference requires more than just purposeful or knowing behavior on the part of the defendant. [A] plaintiff must also allege that the interference was either (1) a *per se* wrongful act or (2) a lawful act done with malice and unjustified in law for the purpose of invading the ... business relationship of another." *Id.* at 441 (citation omitted). "To establish that a lawful act was done with malice and without justification, [a] plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Id.* at 442.

The allegations here fail to establish any basis for believing that the alleged conduct was either intentional or malicious. First, since Geomatrix has not alleged

any specific actions by Hoot, there is no basis for claiming that Hoot intentionally interfered with Geomatrix regarding the NSF certification.

Second, the allegations of statements purportedly attributable to Hoot through Ron Suchecki could not possibly be viewed as interfering with any customer expectancy, because they were only addressed to the NSF committee, not to any potential customers. Geomatrix has failed to identify any public blog posts, press releases, or any other statement originating from Hoot and directed at any Geomatrix customer or potential customer.

Third, the tortious interference allegations fail to establish the proper interference with a reasonable expectancy. "The expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Trepel v. Pontiac Osteopathic Hospital*, 135 Mich. App. 361, 377; 354 N.W.2d 341 (1984). Here, Geomatrix does not identify a single customer that refused to purchase its product because of any alleged statement by Hoot, and therefore arguably alleged a reasonable expectancy. Geomatrix's allegations do not even rise to the level of wishful thinking. Instead, Geomatrix relies on the generic and conclusory allegation that it "had a reasonable business expectancy of obtaining business from customers" that falls far short of the factual allegations needed to survive a motion to dismiss by identifying specific customers and business expectancies. FAC ¶ 469.

Finally, it is well-settled that "[w]here the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Saab Auto. AB*, 770 F.3d at 442. As discussed above and in NSF's Motion, the FAC confirms that there were legitimate concerns raised during protected standard setting activity about the efficacy of the Geomatrix product. Accordingly, Geomatrix has failed to assert a viable tortious interference claim.

## V.     Conclusion and Relief Sought

For the reasons stated in NSF's Motion and the additional reasons set forth above, Hoot respectfully requests that the Court dismiss Geomatrix's First Amended Complaint against it in its entirety with prejudice and grant such other relief that is equitable and just.

Dated:   July 9, 2021                    Respectfully submitted,

                                                         **KERR, RUSSELL AND WEBER, PLC**

                                                         By:  /s/*Fred K. Herrmann*
                                                         Fred K. Herrmann (P49519)
                                                         Matthew L. Powell (P69186)
                                                         Attorney for Defendant
                                                         500 Woodward Avenue, Suite 2500
                                                         Detroit, MI  48226-3427
                                                         (313) 961-0200; FAX (313) 961-0388
                                                         fherrmann@kerr-russell.com
                                                         mpowell@kerr-russell.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2021 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all filing users indicated on the Electronic Notice List through the Court's electronic filing system.

By: */s/Fred K. Herrmann*
Fred K. Herrmann (P49519)
Attorney for Defendant