## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GEOMATRIX, LLC,

     Plaintiff,

v.

NSF INTERNATIONAL,
BIOMICROBICS, INC.,
HOOT SYSTEMS, LLC,
and JAMES BELL,

     Defendants.

Case No. 20-13331

District Judge Robert Cleland

Magistrate Judge R. Steven Whalen

## DEFENDANTS' COMBINED REPLY
## IN SUPPORT OF THEIR MOTIONS TO DISMISS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................1

II.   ARGUMENT...................................................................................1

    A.    Geomatrix's Claims Are Not Ripe for Review ...................................1

    B.    Geomatrix's Claims are Moot and Barred by *Noerr-Pennington*.........3

    C.    Most of Geomatrix's Claims are Time-Barred ...................................4

    D.    Geomatrix Fails to State a Plausible Claim for Relief ........................7

        1.    Geomatrix does not plausibly allege an antitrust claim.............7

        2.    Geomatrix's remaining claims are not plausible .....................10

    E.    Geomatrix Should Not Be Given Another Opportunity to Amend ....14

# TABLE OF AUTHORITIES

**Cases**

*Buchholz v. Meyer Njus Tanick, PA*,
  946 F.3d 855 (6th Cir. 2020) ...................................................................3

*Cedroni Assocs. v. Tomblinson*, *Harburn Assocs., Architects & Planners, Inc.*,
  492 Mich. 40 (2012) ............................................................................14

*Cryptography Research Inc. v. Visa Int'l Serv. Ass'n*,
  No. 04-04143, 2008 WL 5560873 (N.D. Cal. Aug. 13, 2008)...............................9

*Curtis v. Evening News Association*,
  135 Mich. App. 101; 352 N.W.2d 355 (Mich. Ct. App. 1984) ...........................13

*Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*,
  261 F. Supp. 2d 837 (E.D. Mich. 2009) ...............................................11

*McPherson v. Kelsey*,
  125 F.3d 989 (6th Cir. 1997) ...............................................................8

*Midfield Concessions Enters. v. Areas USA, Inc.*,
  130 F. Supp. 3d 1122 (E.D. Mich. 2015) .............................................14

*OverDrive Inc. v. Open E-Book Forum*,
  986 F.3d 954 (6th Cir. 2021) ...............................................................2

*Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Cop.*,
  801 F. Supp. 2d 1163 (D. N. M. 2011).............................................2, 3

*Pullman Indus., Inc. v. Manufacturers Enameling Corp.*,
  15 Fed. App'x 297 (6th Cir. 2001) .....................................................13

*Saab Auto. AB v. Gen. Motors Co.*,
  953 F. Supp. 2d 782 (E.D. Mich. 2013), aff'd, 770 F.3d 436 (6th Cir. 2014) .....14

*Siddiqui v. Gen. Motors Corp.*,
  No. 302446, 2012 WL 335680 (Mich. Ct. App. Feb. 2, 2012) ...........................13

*Volvo N. Am. Corp. v. Men's Int'l. Pro. Tennis Council*,
  857 F.2d 55 (2nd Cir. 1988) ...............................................................................2, 3

**Statutes**

15 U.S.C. §4302.........................................................................................................7

Mich. Comp. Laws §445.904(1)(a).........................................................................11

## I.      INTRODUCTION

Geomatrix's response does not identify the *specific* facts alleged in the amended complaint that would allow any of its claims to proceed.  Geomatrix simply emphasizes the sheer quantity of its allegations, however conclusory they may be, and ignores the need to show more specific substance.  This is insufficient to survive scrutiny on this motion or merit the time and expense of further proceedings.

## II.      ARGUMENT

### A.      Geomatrix's Claims Are Not Ripe for Review

Geomatrix argues its claims are ripe "[w]hether or not [NSF] standards are adopted or changed" because "the damage to the market has been done through the use of the standard-setting process to devalue the potential certification that market participants may obtain."   ECF No. 35 at PageID.787–788.   The alleged "devaluation" of the "potential" certification that market participants may obtain stems only from Geomatrix's allegations that different testing criteria should not apply to T&D versus ATU systems.  *See, e.g.*, ECF No. 24, First Am. Compl., at PageID.481, ¶298 (alleging that an "apples-to-apples" test should apply and if this were to occur, *this entire debate could be eliminated once and for all*.") (emphasis added); *see also* First Am. Compl. at ¶¶227, 299, 321 (alleging harm resulting from the debate over whether to require different testing criteria for T&D versus ATU

systems).  But, to date, different testing criteria have *not* been implemented, and it may never be implemented.  *See* ECF No. 30 at PageID.586.

Geomatrix ignores the Sixth Circuit's controlling decision in *OverDrive*.  The *OverDrive* case confirms that Geomatrix's allegations of "potential" harm based on testing criteria that may or may not be implemented, depend on "contingent future events that may not occur as anticipated or indeed may not occur at all."  *OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 957–58 (6th Cir. 2021).  Most significantly, Geomatrix admits that, if the future actions go Geomatrix's way, "this entire debate could be eliminated once and for all."  First Am. Compl., at PageID.481, ¶298.  That admission alone establishes that this case is not ripe.

Geomatrix misapplies *Plant Oil*[1] and *Volvo North America*.[2]  In those cases, the courts found that challenges to *potential* standards or *unfinalized* rules in their early stages were not ripe for judicial review, while challenges to standards and rules in their final stages were ripe.  Here, Geomatrix challenges *potential* standards and *potential* testing criteria that may never come to fruition, or, as Geomatrix concedes, may "eliminate" the entire debate "once and for all" if a future potential testing criterion is implemented in a manner for which Geomatrix advocates.  Geomatrix's

---

[1] *Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Cop.*, 801 F. Supp. 2d 1163 (D. N. M. 2011).

[2] *Volvo N. Am. Corp. v. Men's Int'l. Pro. Tennis Council*, 857 F.2d 55 (2nd Cir. 1988)

alleged "injury," as with the *potential* standards and *unfinalized* rules in *Plant Oil* and *Volvo North America,* has not materialized and there is no ripe dispute.

Finally, with the law and facts against it, Geomatrix attacks a contention that NSF never made about ripeness. NSF is *not* arguing that it is a governmental entity. Rather, because the ripeness doctrine requires an actual, concrete injury, Geomatrix's failure to pursue available NSF and ANSI remedies that could resolve Geomatrix's grievances renders the claims unripe.

### B.    Geomatrix's Claims are Moot and Barred by *Noerr-Pennington*

Geomatrix now concedes what it evaded alleging in its amended complaint: it *voluntarily withdrew* from the very Standard 40 certification it contends its products need to compete in different states.  Geomatrix ignores the impact of its voluntary withdrawal under *Buchholz*,[3] which confirms that Geomatrix's alleged "injury" is self-inflicted; and, therefore, moot.  Under *Buchholz*, Geomatrix cannot create the very harm about which it complains and pursue NSF for a self-inflicted "injury."

To avoid the inevitable finding that its alleged "injury" is self-inflicted, Geomatrix argues that NSF somehow "devalued" Standard 40 certification, such that Geomatrix made a unilateral decision to withdraw its products from certification. But in making this argument, Geomatrix concedes, as it must, that its alleged

---

[3] *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855 (6th Cir. 2020).  NSF's motion analyzes Geomatrix's voluntary withdrawal from Standard 40 certification considering *Buchholz*.  Geomatrix ignores *Buchholz* altogether.

3

"injury" stems from an inability to obtain *state regulatory approvals* in states requiring Standard 40 certification, not anything "fairly traceable" to Defendants. ECF No. 35 at PageID.789–90 ("Once Geomatrix received certification for GeoMat under Standard 40, it should have been able to obtain state regulatory approvals in states requiring Standard 40 certification; this was not the case."). Geomatrix ignores the cases cited by NSF on pages 15–17 of NSF's motion. These cases confirm that any Geomatrix "injury" is tied to governmental action by state regulatory bodies as to whether to grant approval to Geomatrix's products under their laws. Geomatrix's "injury" is not traceable to Defendants and is barred by *Noerr-Pennington*.

### C.    Most of Geomatrix's Claims are Time-Barred

Geomatrix contends that its antitrust claims are not time-barred, arguing that the first "overt act" of the purported conspiracy that harmed it occurred through the publication of an "Issue Paper" in September 2017 "calling for T&D Systems to be removed from Standard 40 Certification." ECF No. 35 at PageID.793. But Geomatrix ignores its own voluminous contrary allegations, which confirm that the purported "conspiracy" to "call[] for T&D Systems to be removed from Standard 40 Certification" began well over four years ago. *See* ECF No. 30, NSF Motion to Dismiss, at PageID.598–599 (identifying the allegations in Geomatrix's amended complaint that confirm the purported "conspiracy" began over four years ago).

Significantly, while Geomatrix now argues that the September 2017 Issue Paper was the first "overt act" that caused it harm, its amended complaint repeatedly alleges that the purported "co-conspirators" used "Issue Papers" critical of T&D systems *before* September 2017 and over four years before Geomatrix filed this action. *See, e.g.*, ECF No. 24, First Am. Compl., at PageID.416, ¶ 115 (alleging that an August 25, 2015 Issue Paper disparaged T&D Systems by calling for changes to Standard 40 and two testing protocols); PageID.427, ¶ 145 (alleging that an August 22, 2014 Issue Paper disparaged T&D Systems by "claiming, without evidence, that Treatment and Dispersal Systems do not meet the requirements of NSF/ANSI Standard 40 and are unreliable," and that statements were made at the September 24, 2014 meeting that T&D systems are "unreliable in the field"); PageID.445, ¶ 183 (alleging that a "co-conspirator" submitted an August 22, 2014 Issue Paper "asserting that Treatment and Dispersal Systems did not meet the requirements of NSF/ANSI Standard 40" and that this Issue Paper "was submitted less than two months after NSF certified GeoMat under NSF/ANSI Standard 40" [i.e., in September 2014]).  NSF's motion pointed to these specific allegations, among others, see ECF No. 30 at PageID.599–600, but Geomatrix ignores all those specifics, preferring to again argue generalities and selected allegations in isolation. Unfortunately for Geomatrix, though it now unilaterally attempts to characterize the conspiracy as beginning in "September 2017" to avoid the glaring statute of

limitation problem, its own numerous allegations confirm that the conduct about which it complains began long before September 2017.  This establishes that Geomatrix's antitrust claims are untimely.

Geomatrix also argues that its unfair competition, business defamation, and tortious interference claims are not time-barred because the claims did not accrue until Geomatrix "was aware that NSF's actions caused harm related to each of its claims."  ECF No. 35 at PageID.793–794.  From there, Geomatrix concludes, without any analysis of its allegations in the amended complaint, that its claims are timely asserted.  But Geomatrix does not even attempt to address the arguments raised by NSF, including that the same underlying actions that Geomatrix alleges constitute an antitrust "conspiracy" are alleged by Geomatrix as the purported support for the remaining claims.  ECF No. 30 at PageID.601–602.  Thus, for the same reasons as the antitrust claims, the unfair competition, business defamation, and tortious interference claims are also time-barred.

Finally, Geomatrix argues that, even if its claims accrued earlier and the statute of limitations periods have therefore run, it should still be permitted to maintain its lawsuit and the only impact is that the damages period is limited.  ECF No. 35 at PageID.793.  Geomatrix does not cite to any case law to support this proposition, because none exists.  If a claim is time-barred, that is not simply a limitation on damages.  It precludes the untimely claim altogether.

### D.     Geomatrix Fails to State a Plausible Claim for Relief

#### 1.     Geomatrix does not plausibly allege an antitrust claim

*No "per se" claim.*   Geomatrix insists that it can proceed with a "per se" Section 1 antitrust claim.   Geomatrix ignores 15 U.S.C. §4302, which makes clear that, "[i]n any action under the antitrust laws, or under any State law similar to the antitrust laws, the conduct of . . . (2) a standards development organization while engaged in a standards development activity, *shall not be deemed illegal per se*; such conduct shall be judged on the basis of its reasonableness[.] . . ."  (emphasis added). No per se claim can be maintained against Defendants under §4302.

*No plausible antitrust "agreement" or "conspiracy."*   Regardless of the standard employed (per se, rule of reason, or "quick look"), Geomatrix's amended complaint fails to plead a plausible antitrust claim.

First, Geomatrix does not plausibly allege an antitrust "conspiracy."  NSF's motion to dismiss analyzed the *specific* allegations in Geomatrix's amended complaint and explained why those allegations were insufficient to establish a plausible conspiracy.   ECF No. 30 at PageID.605–611 (analyzing the specific substance allegations as compared to the controlling case law rejecting similar allegations).  Rather than point to any specific allegations in the amended complaint and provide this Court with an explanation as to why the allegations show that a conspiracy is plausible, Geomatrix simply makes conclusory reference, shotgun or

broad-brush style, to over 250 paragraphs in its amended complaint, without any explanation as to what those paragraphs say or why they purport to set forth a plausible claim.  *See* ECF No. 35 at PageID.772 (general omnibus reference to 225 paragraphs (145-370) without any specifics or analysis); PageID.777 (general omnibus reference to 261 paragraphs (109-370) without any specifics or analysis). NSF provided a detailed analysis of why these paragraphs do not state a plausible claim, examining the substance of the allegations under the governing case law.  *See* ECF No. 30 at PageID.604–606.  Geomatrix has now had another opportunity to inform the Court of the "who, what, where, when, how, and why" that would support a plausible antitrust claim by pointing to the specific substance of particular allegations that are sufficient to establish a plausible "conspiracy."  Geomatrix has failed to do so, and it is not this Court's role to do this for Geomatrix.  *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'") (citations omitted).

Second, case law makes clear that Geomatrix's allegations, even if true, would prove nothing more than its competitors acting for their own competitive interests and commercial gain, which does not rise to the level of a plausible "conspiracy." *See* ECF No. 30, NSF's Motion to Dismiss, at PageID.608–609.  Even the cases

Geomatrix relies on confirm that it must allege independent conduct, "not merely parallel conduct that could just as well be independent action." *Cryptography Research Inc. v. Visa Int'l Serv. Ass'n*, No. 04-04143, 2008 WL 5560873, at *3 (N.D. Cal. Aug. 13, 2008). Geomatrix's response does not point to a single allegation with specificity that shows anything more than independent conduct by its competitors, which is fatal to its antitrust claims.

Finally, while Geomatrix cites to two cases that have permitted antitrust claims to proceed against SSO's at the pleading stage, Geomatrix ignores the majority of cases that have rejected as implausible the very same type of allegations Geomatrix makes in this case (alleged use of issue papers and statements made at meetings, etc.). *See* ECF No. 30 at PageID.610–611 and the cases explained therein. The same type and manner of allegations Geomatrix makes in the amended complaint have been universally rejected against SSOs like NSF at the pleading stage, for failure to state a claim upon which relief can be granted.

***No market injury.*** Geomatrix makes conclusory, general reference to 18 paragraphs of the amended complaint that it contends allege a market injury. *See* ECF No. 35 at PageID.780. But Geomatrix's conclusory allegations of purported harm to the market do not state a plausible market injury. As NSF's motion points out, Geomatrix has not alleged harm to a single other T&D manufacturer, by name, which could have easily been done if the alleged harm was actually to the "market"

9

generally, and not just to Geomatrix. ECF No. 30 at PageID.613. Geomatrix even admits that its allegations of "harm" are not shared by other T&D system manufacturers. *See, e.g.*, ECF No. 24, PageID.408, ¶ 87 ("Neither NSF nor its participants have made any allegations of substandard performance or attempt to decertify the Anua [T&D] system."); PageID.414, ¶ 107 ("Another Treatment and Dispersal System, Eljen GSF, received NSF/ANSI Standard 40 around the same time as GeoMat in mid-2014.").[4] Geomatrix's own allegations admit that other T&D system manufacturers have *not* sustained the same alleged harm as Geomatrix, contradicting its conclusory allegations of a "market injury."

## 2.    Geomatrix's remaining claims are not plausible

Defendants' motions detailed how the allegations for the unfair competition (Counts II and IV), business defamation (Count VII), fraud (Count VIII), MCPA (Count V), tortious interference (Count IX), and promissory estoppel (Counts X and XI) claims fail to state a plausible claim for relief. *See, e.g.*, ECF No. 30 at PageID.614–617. Geomatrix does not respond specifically to any of the arguments, instead citing to the elements of each claim and concluding that its allegations are sufficient to state a claim (without identifying which specific allegations purportedly state a claim). *See* ECF No. 35 at PageID.781–PageID.787. A recitation of the

---

[4] Reference to two other T&D systems is not sufficient where Geomatrix's allegations confirm that those systems have received NSF certification and do not share in the same alleged *harm* as Geomatrix.

elements of a cause of action is insufficient to state a plausible claim under *Twombly*. These claims require dismissal for the reasons set forth in NSF's motion.

The only argument Geomatrix *tries* to address with any specificity is the MCPA argument, but Geomatrix misplaces its reliance on Judge Hood's decision in *Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837 (E.D. Mich. 2009) and other similar cases from this district.

First, the *Florists' Transworld* decision (and the other cases cited by Geomatrix) does *not* address Michigan Compiled Laws §445.904(1)(a), which exempts from the MCPA "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." NSF's Motion cites to the case law that stands for the proposition that a transaction authorized by law (such as NSF's SSO activities) is exempt from the MCPA's coverage. Geomatrix ignores this altogether.

Second, Geomatrix's reliance on *Florists Transworld* and the other cases for the proposition that business competitors have standing to sue under the MCPA addresses an argument that NSF did not make. NSF's Motion argues that goods with a primary business or commercial use are *not* subject to the MCPA. The *Florists Transworld* decision does not address this, and the floral delivery services at issue in that case were primarily household goods. By contrast, Geomatrix's allegations involve the standards setting process (a business and commercial purpose).

11

Geomatrix's allegations are, therefore, like the allegations that were insufficient to state a claim for relief in cases such as *Zine*, *Slobin* and *Macdonald*, where the goods or services at issue were primarily for business purposes. ECF No. 30 at PageID.617. Geomatrix's response does not address this.

Third, Geomatrix's antitrust, unfair competition, MCPA, business defamation, and tortious interference claims are all based on the alleged publication of false and defamatory statements about Geomatrix and its products. These claims fail as a matter of law because Geomatrix has not identified a single false or defamatory statement that was made about Geomatrix or its products. Instead, what Geomatrix alleges is that various individuals made statements about Treatment and Dispersal Systems generally and their suitability to meet ANSI Standard 40 but did not identify Geomatrix or its products by name.

All these claims fail because the alleged statements are not false and defamatory statements specific to Geomatrix or its products. Under Michigan law, "'[t]o demonstrate liability for defamation, the following elements must be proved: (a) a false and defamatory statement *concerning plaintiff;* (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by the publication (defamation *per quod* ).'" *Curtis v. Evening News Association,* 135 Mich. App. 101;

12

352 N.W.2d 355, 356 (Mich. Ct. App. 1984) ("[b]ecause plaintiff failed to allege that defendant published a false and defamatory statement concerning plaintiff,' plaintiff failed to state a claim on which relief could be granted") (quotation omitted) (emphasis in original). As alleged in the FAC, the statements, on their face, make no accusation of any kind against Geomatrix or its products. The statements are therefore not actionable. *Pullman Indus., Inc. v. Manufacturers Enameling Corp.*, 15 Fed. App'x 297, 303 (6th Cir. 2001) ("the lack of any direct or indirect defamatory reference to [the plaintiff] in [the challenged publication] defeats the plaintiff's defamation claim as a matter of law."). *See Siddiqui v. Gen. Motors Corp.*, No. 302446, 2012 WL 335680, at *6 (Mich. Ct. App. Feb. 2, 2012) ("[o]ne of the basic requirements of a defamatory statement is that it must have a specific reference to the plaintiff" and holding that "the trial court did not err in dismissing plaintiff's business defamation claim" when "the allegedly defamatory statements contained in the letter do not have a specific application" to the corporate plaintiff)." Geomatrix's claims must all be dismissed for this reason alone.

Finally, Geomatrix's tortious interference claims fail for the additional reason that, although Geomatrix asserts that it had "a reasonable business expectancy of obtaining business from customers in states that have adopted NSF/ANSI Standard 40" (ECF No. 24, FAC ¶469, Page ID.537), much more is required to sustain a viable claim than what Geomatrix alleged. For example, in *Saab Auto. AB v. Gen. Motors*

13

*Co.*, 953 F. Supp. 2d 782 (E.D. Mich. 2013), aff'd, 770 F.3d 436 (6th Cir. 2014), allegations were implausible where there were "no facts presented that indicated that any of the various agreements were close to or in the process of being negotiated or approved." *Id.* at 790.  There are no allegations here that Geomatrix was "close to" an agreement with anyone in this amorphous, undefined group of customers, or that Geomatrix even had proposals to sell its products to anyone in these states.  As in *Saab*, Geomatrix presents no facts "that indicate that any of the various agreements were close to or in the process of being negotiated or approved." *Id*.  Geomatrix thus fails to assert a viable tortious interference claim.

Other Michigan case law supports the same conclusion.  *See, e.g.*, *Cedroni Assocs. v. Tomblinson*, *Harburn Assocs., Architects & Planners, Inc.*, 492 Mich. 40, 45 (2012) (that the plaintiff was the "lowest bidder on a public contract" was insufficient); *Midfield Concessions Enters. v. Areas USA, Inc.*, 130 F. Supp. 3d 1122 (E.D. Mich. 2015) (expectancy only found because previous sales supported an expectancy for a new contract).

### E.  Geomatrix Should Not Be Given Another Opportunity to Amend

Geomatrix's amended complaint should be dismissed with prejudice, without another opportunity to amend (which would be Geomatrix's *third* bite at the apple).  Geomatrix's first complaint was filed almost one year ago, on December 18, 2020.  ECF No. 1.  It spanned 158 pages and contained 465 paragraphs.  Geomatrix's first

14

amended complaint, filed after all Defendants moved to dismiss the original complaint, ballooned to 168 pages and 497 paragraphs.  ECF No. 24.  Geomatrix's amended complaint is a direct response to the first motions to dismiss.  It had many months to attempt to plead around the substantive bases for dismissal.  There is simply nothing more Geomatrix can do or say that would save its claims from dismissal.  Further amendment must be denied as futile.

Respectfully submitted,

**HOWARD & HOWARD**
**ATTORNEYS PLLC**

By: /s/ Patrick M. McCarthy
Jon R. Steiger (P35505)
Patrick M. McCarthy (P49100)
Jonathan F. Karmo (P76768)
Attorneys for Defendant NSF International
450 West Fourth Street | Royal Oak, MI
48067 |  248-645-1483
pmm@h2law.com| jrs@h2law.com|
jfk@h2law.com

**KERR, RUSSELL AND**
**WEBER, PLC**

By: /s/ *Fred K. Herrmann*
Fred K. Herrmann (P49519)
Matthew L. Powell (P69186)
Attorneys for Hoot Systems
500 Woodward Avenue, Suite 2500
Detroit, MI 48226-3427
(313) 961-0200; Fax (313) 961-0388
fherrmann@kerr-russell.com
mpowell@kerr-russell.com

**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**

By: /s/ *Jennifer A. Morante*
Jennifer A. Morante (P64892)
Attorneys for BioMicrobics and James Bell
17197 N. Laurel Park Drive, Ste. 201
Livonia, MI 48152
313.327.3100 | 313.327.3101 (f)
Jennifer.morante@wilsonelser.com

Dated: October 21, 2021

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 21, 2021, I caused the foregoing document to be filed with the Clerk of the Court via the Court's electronic filing system, which will cause notice of same to be sent to all counsel of record.

By: /s/ Patrick M. McCarthy

4830-6412-0059, v. 1